Wallace E. COLEMAN, Jr., Petitioner-Appellant

v.

Robert H. BUTLER, Sr., Warden, Louisiana State Penitentiary, Respondent-Appellee

No. 86–4156.

United States Court of Appeals, Fifth Circuit.

May 15, 1987.
Opinion on Denial of Rehearing July 8, 1987.

Wallace E. Coleman, Jr., pro se.

Louis G. Garrot, Dist. Atty., Abbeville, La., for respondent-appellee.

Before CLARK, Chief Judge, GOLDBERG and GEE, Circuit Judges.

GEE, Circuit Judge:

Wallace Coleman, Jr. was convicted of auto theft in a Louisiana state court proceeding and sentenced to serve 20 years as an habitual offender. The Louisiana Supreme Court affirmed the conviction. *State v. Coleman*, 358 So.2d 289 (La.1978). Coleman brings this habeas petition to challenge the constitutionality of an evidentiary presumption presented in the jury charge. Because we conclude that the challenged instruction did not present a mandatory presumption, we affirm.

The evidence adduced at trial showed that in the fall of 1976, Don Stelly's wife awakened just before 6:30 a.m. to the sound of their 1975 Chevy leaving the premises. She arose and made phone calls, which confirmed that neither her husband nor relatives had taken the vehicle. Sometime before 7:00 a.m., the taking was reported to the police, who dispatched a radio report. Thereafter, a police officer apprehended Coleman driving the car some 30 miles away, just two blocks short of an entrance to the interstate highway system.

Coleman's sole witness was his wife, who testified only about the family and their residence, which was about 100 miles distant from the area where Coleman was apprehended. The arresting officer testified that Coleman stated that "the keys were in the automobile and I borrowed it." No additional testimony was adduced at trial to explain Coleman's possession of the vehicle.

Coleman challenges the portion of the charge instructing that guilt could be presumed from the unexplained possession of recently stolen property. He contends the effect of this instruction was to unconstitutionally relieve the state of its burden of proving beyond a reasonable doubt that he possessed the "intent to deprive permanently." He argues that the instruction impermissibly shifted the burden of persuasion to him, in violation of his right not to testify and his right to rely on his presumption of innocence.

Coleman was convicted of theft under La.Rev.Stat.Ann. § 14:67 (West 1986). This statute defines theft as the misappropriation or taking of anything of value, further describing the "intent to deprive the other permanently" of the property as "essential." By contrast, La.Rev.Stat.Ann. § 14:68 denounces the lesser crime of "unauthorized use of a movable," defined as the intentional taking or use of a movable "but without any intention to deprive the other of the movable permanently." The Louisiana Code permits the use of certain legal presumptions, including a rebuttable presumption that "the person in the unexplained possession of property recently stolen is the thief." La.Rev.Stat. § 15:432 (West 1981).

■ The Fourteenth Amendment prohibits the state from using evidentiary presumptions in a jury charge when they have the effect of relieving the state of its burden of persuasion on an essential element of an offense. *Francis v. Franklin*, 471 U.S. 307, 105 S.Ct. 1965, 1970, 85 L.Ed.2d 344 (1985) (citing *Sandstrom v. Montana*, 442 U.S. 510, 520–24, 99 S.Ct. 2450, 2457–59, 61 L.Ed.2d 39 (1979)). A mandatory presumption, one that instructs a criminal jury that it must infer the presumed fact if the state proves the predicate fact or facts, is unconstitutional. A permissive inference suggests to the jury that it may, but need not, draw an inference if the state proves the predicate fact or facts. A permissive inference is unconstitutional only if the suggested conclusion is not one that reason and common sense justify in light of the proven facts. *Franklin*, 105 S.Ct. at 1971.

■ In determining whether the instruction creates a mandatory presumption or a permissive inference, we initially focus on the specific language that is challenged. If a jury could reasonably have understood that portion of the jury charge as creating a presumption that relieves the state of its burden of persuasion on an element of the offense, the potentially offending words must be considered in the context of the entire charge. "Other instructions might explain the infirm language to the extent that a reasonable juror could not have considered the charge to have created an unconstitutional presumption." *Id.* (citing *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973)).

Coleman challenges this portion of the jury charge:

A legal presumption relieves him in whose favor it exists from the necessity of any proof; but may nonetheless be destroyed by rebutting evidence; such is the presumption that ... the defendant is innocent; that the person in the unexplained possession of property recently stolen is the thief....

From the recent possession of stolen things guilt may be inferred unless there is a reasonable account given of the property as having been lawfully and not feloniously obtained. This inference or presumption is strengthened or weakened in accordance with the length of time between the theft and the time of finding of the property.

If it is shown to your entire satisfaction and beyond a reasonable doubt that the defendant possessed the things of value described in the bill, either physically or constructively, it must also be shown by the same degree of proof, that the intention of defendant was to deprive another permanently of his property in violation of the theft article.

The sole issue on appeal is whether this portion of the charge could reasonably have been interpreted as a mandatory presumption, one that relieved the state of its burden of persuasion on the question of intent. We focus on the instruction that "[f]rom the recent possession of stolen

things *guilt may be inferred* unless there is a reasonable account given of the property as having been lawfully and not feloniously obtained." The word "may" dispels the notion that the instruction *mandates* the jury to infer either that the defendant participated in the taking or that the defendant possessed the requisite intent to deprive permanently. The next sentence, in fact, invites the jury to weigh the strength to be accorded the inference by considering the length of time between the theft and the finding of the property.[1] This language not only denotes the permissive quality of the inference, but also confines the presumption to its proper scope, that of deciding whether the possessor participated in the taking.

■ In isolation, this statement might be interpreted as allowing an inference that the defendant is guilty of theft, without further proof of the element of intent, once the state has proved the defendant's unexplained, or unsatisfactorily explained, possession of recently taken property. That notion would be fleeting. The immediately subsequent instruction reiterates that the fact of the defendant's possession must be shown *beyond a reasonable doubt* and that, by the *same degree of proof,* it must

be shown that the defendant intended to deprive another permanently of his property. Thus, we conclude that a reasonable juror could not have interpreted this portion of the charge as mandating that proof establishing Coleman's possession of the recently stolen automobile required the jury to infer that he possessed the requisite intent to deprive permanently.[2]

■ Even assuming arguendo that this portion of the charge could be interpreted as creating an impermissible presumption, the jury charge as a whole would disabuse a reasonable juror of this notion. The district court began with an instruction on the presumption of innocence and the accused's right to rely on that presumption, further instructing the jury that the state had the "burden of proving beyond a reasonable doubt every fact and circumstance necessary to constitute the guilt of the accused." In addition to defining "beyond a reasonable doubt," the court repeated this standard of proof numerous times throughout the charge. The court then instructed the jury that it was prohibited from drawing any adverse inference from the accused's decision not to testify. After reciting both the article on theft and unauthorized use of

---

1. Thus, the jury was assured it need not infer that the defendant unlawfully took the property, even in the absence of rebutting evidence concerning how the defendant acquired the property. The presumption, at most, creates a shift in the burden of *production* in that it may be rebutted by a reasonable account of the property as having been lawfully and not feloniously obtained. *Franklin* held that a rebuttable mandatory presumption that shifts the burden of *persuasion* on an essential element of the alleged crime is unconstitutional. It specifically reserved the question whether a mandatory presumption that shifts only the burden of production is unconstitutional. 105 S.Ct. at 1971 n. 3. Thus, it is clear that the Supreme Court has not found that a permissive inference that signals a shift in the burden of production violates due process.

Moreover, the Supreme Court recently held that placing the burden of proving self-defense on a defendant charged with murder does not violate the due process clause of the fourteenth amendment. *Martin v. Ohio,* — U.S. —, 107 S.Ct. 1098, 94 L.Ed.2d 267 (1987).

2. We are mindful that the Eleventh Circuit has found an evidentiary presumption similar to the

one in today's case to be an unconstitutional mandatory presumption. *United States v. Johnson,* 805 F.2d 1518 (11th Cir.1986) (petition for rehearing pending).

[P]ossession of recently stolen property ... is a circumstance on which the jury *may* reasonably draw the *inference* that the person in possession participated in some way in the theft....

If you find ... that, while recently stolen, the property was in the possession of the accused, the jury *would be justified* in drawing ... the *inference* ... that the accused participated in some way in the theft of the property....

*Id.* at 1522 (Emphasis added).

The Eleventh Circuit concluded that this instruction rose to the level of an unconstitutional mandatory presumption. That Court does not, however, favor us with an explanation of how this instruction violates the Supreme Court's guideline that a mandatory presumption is one that instructs the jury that it *must* infer the presumed fact, while a permissive inference suggests a possible conclusion to be drawn if the state proves the predicate facts, but does not require the jury to draw that conclusion. *Franklin,* 105 S.Ct. at 1971.

movables, which necessarily reiterated their differing elements of intent, the court emphasized: "It will be noted that the theft article makes proof of an intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking essential before a conviction can be had." The court then gave the instruction challenged by Coleman. Thereafter, the court addressed among other things, the issue of greater and lesser offenses, stating "you can only find the defendant guilty of that grade of the offense of which you are convinced beyond a reasonable doubt he is guilty." Although the language of the challenged instruction could be improved,[3] we conclude that it nevertheless does not create an unconstitutional mandatory presumption.

AFFIRMED.

GOLDBERG, Circuit Judge, dissenting:

I respectfully but unequivocally dissent. The majority fails to address the lack of empirical support for the circumstantial inference to be drawn, and the corresponding lack of support for the presumption at issue. This lack of support precludes any finding of guilt beyond a reasonable doubt. Because insufficient evidence was adduced upon which to convict, I believe that the majority should not have undertaken to parse the effects on a jury of the instruction given by the trial judge. Finally, the majority fails properly to characterize the particular jury instruction.

## I.

Taking the view most favorable to the government, *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), the only circumstantial evidence adduced at trial putatively relating to intent permanently to deprive was the fact that Defendant Coleman, who resided in a different part of Louisiana, was found during the morning in the Stelly's car within a few hours of its being taken and less than 100 miles from the Stelly's garage, where the car had been parked with the keys in the ignition. This circumstantial evidence, however, simply does not constitute *any*, let alone adequate, relevant evidence of intent.

Relevant evidence "means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. The inference that persons found in recently "stolen" cars intend to steal rather than to joyride does not appear more likely than not true as a matter of common sense. The circumstantial evidence adduced at trial, which bore solely on the identical inference to that contained in the presumption, did not demonstrate either the empirical likelihood of the generalized inference nor the likelihood that the inference was more or less probable in this particular case. In fact, the circumstantial evidence does not make the generalized inference (that a person in possession of recently "stolen" property intends to steal) even conditionally relevant. *See* Fed.R.Evid. 104(b); Morgan, Basic Problems of Evidence 45–46 (1962).

If we consider the circumstantial evidence alone, the inference contained in the presumption becomes *more* tenuous, rather than less. To begin with, we have no empirical verification that a person found in someone else's car without the owner's permission more likely than not intends to steal the car. Second, we have no evidence that such intent is more or less likely if keys were left in the car, or if the car were left in a garage (of varying types). Third, we do not know if finding the person in the car at a short time and distance from the car's previous location is more likely than not to show an intent permanently to deprive, because we would have to conduct an empirical study of the motivations and habits of car-takers. Fourth, we do not know

---

**3.** To avoid the potential for confusion, the better practice would be to eliminate all suspect language, i.e. that from the possession of recently "stolen" things, "guilt" may be inferred, and the verbiage concerning the presumption that the person in the possession of property recently "stolen" is the "thief." The instruction should clearly confine the presumption to its narrow scope, which permits, but does not require, that jury to draw the inference that the possessor of property recently taken from another participated in the taking.

if a long time and distance is more likely or not to indicate such intent, because we do not know if the person found in possession is likely to be identical with the person who initially took the car, and we do not know how often either person would form the requisite intent after a long time and distance. These speculations go on and on, and impermissibly " 'pil[e] inference upon inference' " to prove subjective intent to commit the substantive crime. *Ingram v. United States*, 360 U.S. 672, 680, 79 S.Ct. 1314, 1320, 3 L.Ed.2d 1503 (1959), *reh. denied*, 361 U.S. 856, 80 S.Ct. 42, 4 L.Ed.2d 96 (1959) (quoting *Direct Sales Co. v. United States*, 319 U.S. 703, 711, 63 S.Ct. 1265, 1269, 87 L.Ed. 1674 (1943).

Obviously, conjoining probabilistically uncertain inferences does not necessarily make the joint inference more probable than any of the individual inferences. In this case, the closing argument of the government indicates how impossibly subjective, lacking in proof, and devoid of empirical verification the requisite inference was.

> All we found[,] he [the defense attorney] said[,] was that the man was in the car; that's all there was to it. But there was something else to it. It was circumstance. Where was he going with that car? Now if this had been a person from Vermillion Parish, say from Erath and he stole a car in Gueydan and he was going to get home, fine. You'd say that he would probably abandon the car there and it would be found. This man is heading for the Interstate Highway; he doesn't even live in the state of Louisiana [which is an incorrect statement] and if they [the police] had not have found that car, it would not ever had gone back. It is not his doing that the car turned up, it's the police that arrested him and caught him in the car. I think that the circumstances show that his intent was not to return the car but to take it to Mississippi. What are we to believe[,] that he was going to drive back here next week or the week after and return

that car[?] Or was he going to keep it and use it over there, out of the state where it was less likely to be found[?] Mr. Stelly is not ever going to find it there. The police may never find it there.

Rec. at 88. The inference to be drawn thus amounts to *pure conjecture* on the facts adduced.

Further, we cannot and should not infer the requisite existence of empirical probabilities from the legislative creation of the presumption. Although the legislative judgment is entitled to deference, *see Leary v. United States*, 395 U.S. 6, 36, 89 S.Ct. 1532, 1548, 23 L.Ed.2d 57 (1969), presumptions are subject to independent constitutional questioning by the judiciary. *See id.; Patterson v. New York*, 432 U.S. 197, 211 n. 12, 97 S.Ct. 2319, 2327 n. 12, 53 L.Ed.2d 281 (1977). The constitutionality of this particular presumption has already been seriously challenged by the Louisiana Supreme Court. *See State v. Coleman*, 358 So.2d 289, 291–92 (La.1978) (citing *State v. Searle*, 339 So.2d 1194, 1203 (La. 1976), which referred the presumption to legislative attention). Moreover, the legislature also created the lesser-included strict-liability crime, which equally may have indicated the empirical likelihood of joyriding or the difficulty of proof of intent to deprive. Either inference should caution against attributing empirical validity to the presumption.

Thus, there is no relevant circumstantial evidence of intent. The only relevant direct evidence of intent was the arresting officer's hearsay testimony to the statement that Coleman borrowed the car, which the jury was entitled to disbelieve. Coleman himself never took the stand. The empirically unsubstantiated statutory presumption therefore became the sole "relevant" evidence [1] from which the jury could "infer" guilt beyond a reasonable doubt.

But this highly questionable presumption should never have been provided in the jury instruction. *See County Court of Ul-*

---

1. I refer to the presumption as evidence, even though technically it is a legal means of drawing inferences from other evidence, because the presumption performs the same function as evi-

dence if the facts that make the presumption operate are proved true beyond a reasonable doubt.

*ster County v. Allen,* 442 U.S. 140, 163–64, 99 S.Ct. 2213, 2227, 60 L.Ed.2d 777 (1979) (validity rests "on an evaluation of the presumption as applied to the record before the Court."). The presumption could not withstand constitutional scrutiny, because it is not intuitively obvious and because there is no empirical data to support it.

> [A] criminal statutory presumption must be regarded as ... unconstitutional, unless it can at least be said *with substantial assurance* that the presumed fact is more likely than not to follow from the proved fact on which it is made to depend.... In order thus to determine the constitutionality of the 'knowledge' inference, one must have direct or circumstantial data regarding the beliefs ... generally.... Since the determination of the presumption's constitutionality is 'highly empirical,' ... it follows that we must canvass the available, pertinent data.

*Leary,* 395 U.S. at 36–38, 89 S.Ct. at 1548–49 (citations and footnote omitted) (emphasis added); *see Ulster County,* 442 U.S. at 166–67, 99 S.Ct. at 2219–20. The presumption here bears *directly* upon criminal intent to steal, and is not "well founded in history, common sense, and experience" like that in *Barnes v. United States,* 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973) (knowledge of the stolen *nature* of recently stolen property can be presumed). *Ulster County,* 442 U.S. at 172, 99 S.Ct. at 2232 (Powell, J., dissenting). As the presumption was not proved to be relevant and should not have been given, Defendant Coleman could not constitutionally be convicted upon it. We could not uphold the conviction on the basis of the circumstantial evidence without the presumption, and should not uphold it when the empirically unsubstantiated presumption is added as putatively relevant evidence. " '[A] conviction resting on [an unconstitutional] presumption cannot be deemed a conviction based on sufficient evidence.' " *Id.* at 147 n. 5, 99 S.Ct. at 2219, n. 5 (majority opinion) (quoting *Turner v. United States,* 396 U.S. 398, 424, 90 S.Ct. 642, 656, 24 L.Ed.2d 610 (1970), *reh. denied,* 397 U.S. 958, 90 S.Ct. 939, 25 L.Ed.2d 144 (1970)).

It also defies logic to hold that the presumptive inference here need only be rational to permit a conviction, because contained in a permissive jury instruction. *See* Maj.Op. at 1048; *cf. Francis v. Franklin,* 471 U.S. 307, 313, 105 S.Ct. 1965, 1971, 85 L.Ed.2d 344 (1985) (permissive inferences need only be rational, or justified by reason and common sense in light of the facts). The presumptive inference was the sole evidentiary proof, and regardless of whether it was contained in the "permissive" instruction or solely in the circumstantial evidence corresponding to the presumption, it could not permit proof beyond a reasonable doubt if it was not (at least) proved more likely than not true.

As the sole incriminating evidence of intent, the presumptive inference (and the circumstantial evidence corresponding to it) had to (and did not) conform to the reasonable doubt standard. *Cf. Ulster County,* 442 U.S. at 169 n. 2, 99 S.Ct. at 2231 n. 2 (Powell, J., dissenting) ("It may well be that even those presumptions that do not shift the burden of persuasion cannot be used to prove an element of the offense, if the facts proved would not permit a reasonable mind to find the presumed fact beyond a reasonable doubt."). No other evidence relevant to intent was adduced. What additional circumstantial evidence existed did not even prove the presumption to be more likely true than were there no such evidence.

Whatever "guilt beyond a reasonable doubt" may mean, *see In re Winship,* 397 U.S. 358, 369 & nn. 1, 2, 370, 90 S.Ct. 1068, 1075 & nn. 1, 2, 1076, 25 L.Ed.2d 368 (1970) (Harlan, J., concurring); *Jackson v. Virginia,* 443 U.S. 307, 317 n. 9, 99 S.Ct. 2781, 2788 n. 9, 61 L.Ed.2d 560 (1979), *reh. denied,* 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979) (doubt based on reason which arises from the evidence or lack of evidence), it requires *proof.* Proof of intent did not occur. What we have instead is a quintessential case of joyriding, the unauthorized use of movables *without* an intent permanently to deprive. The result reached here permits a real, not hypothetical, defendant to be incarcerated on the basis of a real jury's predilections, not on the basis of proof.

## II.

Even assuming *arguendo* that the "permissive" instruction was proper and that the circumstantial evidence was relevant, we still might not be able to uphold the conviction under *Glasser* and *Jackson*. Under *Glasser*, "the verdict must be sustained if there is substantial evidence, taking the view most favorably to the Government, to support it." 315 U.S. at 80, 62 S.Ct. at 469. In explaining *Glasser*, we have said that:

> [i]t is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt. A jury is free to chose among reasonable constructions of the evidence.

*United States v. Bell*, 678 F.2d 547, 549 (5th Cir. Unit B 1982) (en banc) (footnote omitted). *Jackson* reiterates and rephrases the appellate inquiry: "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. at 319, 99 S.Ct. at 2789 (emphasis in original).

When assessing the sufficiency of empirically questionable inferences from evidence, however, we certainly cannot draw the inferences in favor of the government *so strongly as to preclude a reasonable doubt*. *Glasser* cannot be read as a talisman for guilt, notwithstanding the myriad of cases baldly asserting the standard to have been met. But neither *Glasser* nor *Jackson* inform us as to the degree of inferential strength we must attribute in favor of the government. Thus, the inferences to be drawn favorably must, to some relevant degree, be based upon the nature of the evidence itself and the inferential strength that appears therein. We cannot attribute to evidence inferential strength sufficient to convict that may not exist, even though to do so would favor the government's interpretation. Were we to do so, we would uphold convictions not on the basis of proof, but on the retroactive, subjective hypothecations of appellate review, in clear violation of *Winship* and *Jackson*.[2]

Yet, we have never required proof of the inferential strength of circumstantial evidence. Proof of inferential strength might be impossible to obtain, and would likely devolve onto other, more fundamental, empirically unproven assumptions. We have thus relied upon objective appellate review, through the *Glasser* standard, to protect the accused from convictions based upon empirically unjustified inferences or from lack of proof at trial. This reliance, however, is extremely problematic if the inference to be drawn beyond a reasonable doubt does not appear to be (as a matter of history, common sense, logic, or intuition) true beyond a reasonable doubt to the reviewing judge. The alternative inference, consistent with innocence, must be sufficiently likely to create in the judge's mind a doubt based upon reason and the lack of evidence.

Notwithstanding, the reviewing judge must determine whether *any* rational juror could be left without a reasonable doubt. Without evidence of the empirical likelihood of the circumstantial inferences, this inquiry is wholly speculative, and the evidence itself cannot provide the *proof* required. Such appellate inference-drawing, however, occurs all the time, without any evidence in the record against which to test the likelihood that appellate inference-drawing sensibilities comport with empirical reality. We are thus cast adrift upon the waters of the law to navigate the straits of human rationality without an empirical or theoretical compass.

---

2. We abandoned "subjective" review of jury deliberations because we were unable to assess the subjective motivations and reasoning of a particular jury in a particular case, especially on the basis of a paper record. We thus required "objective" analysis of the evidence adduced at trial, and we will uphold the jury's subjective beliefs if the jury's decision would be objectively reasonable. If we are to employ objective standards, however, we must provide an adequate theoretical basis properly to distinguish what is objectively permissible from that which is impermissible. For us to do otherwise would simply reincorporate subjectivity at the appellate level.

In this case, to uphold Coleman's conviction we would have to decide that the empirically unsubstantiated inferences drawn from the particular facts surrounding Coleman's presence in the Stelly's car, when drawn in favor of the government, could rationally support the inference of guilt beyond a reasonable doubt. If, as we are presently assuming, the presumption and circumstantial evidence are relevant, we still have need to know the inherent inferential strength of the evidence, of just *how relevant* is the evidence, before we could conclude confidently that the evidence proved intent beyond a reasonable doubt to a rational juror. Similarly, the actual evidence adduced here (multiple, empirically unsubstantiated inferences) cannot suffice to prove intent beyond a reasonable doubt. Appellate reliance on the *Glasser* standard is certainly unconstitutional if the inference does not even appear to be more likely than not true; no rational juror could be left without a doubt based upon reason and the lack of evidence.

Because I do not believe that sufficient (or any) evidence was adduced at trial to permit a hypothetical rational juror from finding guilt beyond a reasonable doubt under *Jackson,* I do not think we should parse the reactions of a (potentially different) hypothetical reasonable juror to erroneous instructions under *Sandstrom v. Montana,* 442 U.S. 510, 514, 99 S.Ct. 2450, 2454, 61 L.Ed.2d 39 (1979). If we cannot uphold a conviction based upon the circumstantial evidence, we also cannot uphold the correlative "permissive" jury instruction to the circumstantial evidence. At minimum, additional proof of the likelihood of the inference is required in each case, regardless of how the jury instruction is to be characterized.

Finally, it is indubitably clear that this permissive instruction constitutes harmful error. *See Rose v. Clark,* —— U.S. ——, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986). There is no other putatively relevant evidence but the presumption, let alone evidence sufficient for proof beyond a reasonable doubt. Without the impermissible presumption, and even with it, we cannot find sufficient evidence of guilt beyond a reasonable doubt in the record.

### III.

Lastly, I disagree with the majority's *Sandstrom* psycholinguisticanalysis[3] of the effect of this particular instruction on a hypothetical reasonable juror.[4] I believe that the instruction impermissibly shifted the burden of proof, notwithstanding the majority's reconstruction of the hypothetical juror's cognitive assimilation of the particular instruction in relation to the charge as a whole. The common usage that informs the majority opinion may be divorced from the social phenomenology of jury charging. Recent research and analysis indicates that putatively permissive jury charges may be perceived as mandatory because promulgated by persons in authority. *See* Note, *The Improper Use of Presumptions in Recent Criminal Law Adjudication,* 38 Stan.L.Rev. 423 (1986) (authored by Prof. Charles Collier); *see also* Note, *The Appearance of Justice: Judges Verbal and Nonverbal Behavior in Criminal Jury Trials,* 38 Stan.L.Rev. 89 (1985) (authored by Dr. Peter D. Blanck, Prof. Robert Rosenthal, and Judge LaDoris Hazzard Cordell).

I also believe that the majority's linguistic analysis is flawed. The majority holds that a reasonable juror would interpret the instruction provided at trial, when read as a whole, not to shift the burden of proof but simply to indicate a permissible inference that must still be proved beyond a reasonable doubt. Maj. Op. at 1049–50. In contrast, my own opinion is to the con-

---

**3.** By this neologism, I mean to denote the task of interpreting the meaning of a particular linguistic expression (of any length) to an individual or to a group. This is not a task to which we are by training or nature perfectly suited.

**4.** To perform *Sandstrom* psycholinguisticanalysis in this particular case, we are required by *Franklin* and *Ulster County* to determine wheth-

er the instruction, as cognitively interpreted by a hypothetical reasonable juror, was permissive or mandatory. This requires us, at minimum, to provide a theoretical basis for attributing "objective" human reactions to the subjective, real-world contexts in which such behavior occurs, to insure that what is permissive in theory is not mandatory in fact.

trary. The charge stated that "guilt may be inferred *unless* there is a reasonable account given of the property as having been lawfully and not feloniously obtained." The word "unless" makes clear that the instruction is mandatory; guilt is to be inferred *absent* production of exculpatory evidence by the defendant.

Further, because the accused is not required to present any evidence at a criminal trial, and because of the particular presumption at issue here, the majority's distinction of the burden of production from the burden of persuasion is untenable. Maj. Op. at 3826, n. 1; *see* Fed.R.Evid. 301; *Mullaney v. Wilbur,* 421 U.S. 684, 702 n. 31, 95 S.Ct. 1881, 1891 n. 31, 44 L.Ed.2d 508 (1975); *Ulster County,* 442 U.S. at 157 n. 16, 99 S.Ct. at 2225 n. 16; *Sandstrom,* 442 U.S. at 515, 519, 99 S.Ct. at 2454–57; *Franklin,* 471 U.S. at 314 n. 3, 105 S.Ct. at 1971 n. 3; *cf. Hammontree v. Phelps,* 605 F.2d 1371, 1373–77 (5th Cir.1979) (discussing *Ulster County* and *Sandstrom* ). Logically, *any* presumption that *by its own terms* is capable of proving a requisite fact beyond a reasonable doubt inherently shifts the burden of proof if the *presumption itself* is not required to be proved true (as a general empirical matter) beyond a reasonable doubt. Only a lesser presumption, that one can infer the presumed fact from the proved fact but cannot on the basis of the presumption itself infer the presumed fact so strongly as to satisfy the reasonable doubt requirement, permits a distinction of the burdens of production and persuasion.

Notwithstanding, the Supreme Court in *Ulster County,* 442 U.S. at 157, 99 S.Ct. at 2224–25, has held that permissive presumptions can only shift the burden of proof if the inference (as applied) is irrational, because only then could permissive presumptions cause a jury to reach an erroneous factfinding under the appropriate burden of proof. This is consistent with the above,

in that a *truly* permissive presumption cannot (by itself) have the requisite inferential strength, even if wholly unrebutted, on which to infer guilt beyond a reasonable doubt. Permissive presumptions allegedly serve only to suggest rational (at minimum) inferences to which a jury might attribute varying degrees of evidentiary weight (empirical likelihood) based on the proof at trial.

A problem arises, however, if the language of the putatively permissive inference suggests an inferential strength incompatible with its function as a permissive inference. In this case, assuming *arguendo* that the presumption was permissive in the sense of merely suggesting what the jury might do, it was not permissive in suggesting that the jury might find *guilt* (beyond a reasonable doubt) solely from operating the statutory presumption upon a predicate fact proved beyond a reasonable doubt. The instruction did more than suggest a rational inference; it suggested the inferential strength of the inference, sufficiency to convict. Any presumptive instruction explicitly or implicitly defining its inferential strength as sufficient, if unrebutted, to infer the requisite fact beyond a reasonable doubt thus cannot be considered permissive.[5]

Even were the instruction to have shifted only a burden of production, the language of the presumption shifted the burden of persuasion here. Coleman met the burden of production for a normal inference of intent; the jury heard Coleman's self-described explanation (to the officer). But, because the explanation constituted the misdemeanor of unauthorized use of movables, it clearly was not a reasonable account of *lawful* acquisition, and thus could not serve to shift the burden of persuasion back to the government *even if believed.*

More importantly, the presumption itself states that the burden of proof is shifted. "A legal presumption relieves him in whose

---

5. The *Ulster County* court also reiterated that permissive statutory presumptions only need be more likely than not true, having the same probative force as any relevant evidence, whereas mandatory presumptions must support guilt beyond a reasonable doubt. Id. at 166–67, 99 S.Ct. at 2229–30. This distinction too is untenable, as here, if the permissive inference refers to its

own inferential strength. No other relevant evidence can bootstrap its own judgment as to its inferential power. *See generally* Ashford & Risinger, *Presumptions, Assumptions, and Due Process in Criminal Cases: A Theoretical Overview,* 79 Yale L.J. 165 (1969); Nesson, *Reasonable Doubt and Permissive Inferences: The Value of Complexity,* 92 Harv.L.Rev. 1187 (1979). I

favor it exists from the necessity of *any* proof...." Even viewing the instructions as a whole, *see Cupp v. Naughten,* 414 U.S. 141, 146–49, 94 S.Ct. 396, 400–01, 38 L.Ed.2d 368 (1973), this burden was impermissibly shifted. Although the jury instruction repeatedly refers to the correct burden of proof, a hypothetical reasonable juror would understand *the function* of the presumption in relation to the charge as a whole *to be a means of fulfilling the reasonable doubt requirement.* See Sandstrom, 442 U.S. at 518 n. 7, 99 S.Ct. at 2456 n. 7. Otherwise, there is no need for the authoritative presumption; the government's lawyer already can and will tell the jurors the inference he would like them to make from the circumstantial evidence upon which the presumption operates.

Thus, if a judge says that *guilt* (here, the requisite fact of an intent to steal) can be presumed from the recent possession of stolen property, and if evidence of such possession is proved beyond a reasonable doubt, the reasonable juror will follow the presumption *to meet* the burden of proof on intent, even if that burden is repeatedly stressed. *See Franklin,* 471 U.S. at 319, 105 S.Ct. at 1974 ("general instructions as to the prosecutions burden and the defendant's presumption of innocence do not dissipate the error in the challenged portion of the instructions."). This is true even of a presumption that merely shifts the burden of production. The hypothetical reasonable juror will attempt to follow all the law described to him or her, and will thus interpret the presumption itself to conform to and to satisfy the burden of proof.

### Conclusion

What we have done by implementing these objective tests of reasonable jury behavior is to permit proof of guilt in a case where inadequate relevant evidence exists upon which to convict. I cannot think of a clearer violation of due process. I do not

believe we should employ reasonable juror standards if such use vitiates the requirement of proof. Without adequate empirical or theoretical bases to supply definitive content and predictability to the "reasonableness" standards that we employ, these standards must be considered unreasonable, void for vagueness, and open invitations for the unbridled exercise of subjective decisionmaking by judges. That Petitioner Coleman could fairly characterize this purported objective review as no more than a "two out of three appellate judges" standard can provide him with little solace.

### ON DENIAL OF REHEARING
GOLDBERG, Circuit Judge, dissenting:

Adhering to the views expressed in my dissent to the panel opinion, I respectfully dissent to the denial of rehearing. I write only to urge that we acknowledge our substitution of the civil choice of inferences standard, *see United States v. Bell,* 678 F.2d 547, 549 (5th Cir. Unit B 1982) (en banc) ("A jury is free to choose among reasonable constructions of the evidence."); *Boeing Co. v. Shipman,* 411 F.2d 365 (5th Cir.1965) (en banc), for the historical criminal reasonable doubt standard, *see, e.g., State v. Jefferson,* 10 So. 199, 200 (La. 1891) ("It is not sufficient [for a jury to] believe [a prisoner's] guilt only probable. In fact, no degree of probability merely will authorize a conviction; but the evidence must be of such a character and tendency as to produce a moral certainty of the prisoner's guilt to the exclusion of a reasonable doubt."). Because the reasonable doubt standard has been vitiated beyond recognition, we should openly admit that proof beyond a reasonable doubt of every element of the crime no longer is "implicit in the concept of ordered liberty." *Palko v. Connecticut,* 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937). We should not profess that we are applying the reasonable doubt standard when we are not.

---

shudder to consider two related and intractible questions: what quantum of circumstantial evidence (of a character sufficient, in varying degrees, to increase the empirical likelihood of the inference framed in a presumption) will render unnecessary proof of the general empirical validity (beyond a reasonable doubt) of a mandatory presumption or of a permissive presump-

tion defining its inferential strength as sufficient to find guilt; and what quantum of circumstantial evidence (lending what degree of empirical support) when combined with a presumption of a specified (or implied) degree of inferential strength (greater than mere rationality) will satisfy *Winship.*