COBB, Judge.
On November 21, 1996, Ercell Manuel, Jr., was convicted of murder, a violation of § 13A-6-2, Ala.Code 1975, in connection with the fatal shooting of Danny Lamar Strickland. He was sentenced to life imprisonment.
The evidence presented at trial tended to show that Manuel fatally shot Strickland during an argument that occurred in the house of a mutual friend, Kim Hill. Manuel, Hill, and two other persons were at Hill’s residence when Strickland entered. Hill testified that she was involved in a sexual relationship with Manuel at the time of the shooting and that she had had a relationship with Strickland in the past. The fact that Manuel shot Strickland was undisputed. It is also undisputed that Strickland was unarmed.
Manuel’s trial strategy rested on self-defense. Manuel testified that Strickland abruptly entered Hill’s residence without knocking, that Strickland was hostile toward him, and that Strickland appeared to be reaching into his pants for a weapon just before he fired his gun.
Although Manuel raised three issues in his brief to this Court, our disposition of the case requires that we address only one of these issues.
Manuel contends that the trial court committed reversible error when it charged the jury as follows:
“Ladies and gentlemen, in a trial of a person for committing or attempting to commit a crime of violence, the fact that he was armed with a pistol and had no license to carry the same shall be prima facie evidence of his intention to commit said crime of violence unless the evidence which proves the killing rebuts that presumption.”
(R. 332) (emphasis added). Manuel argues that this jury instruction created a mandatory rebuttable presumption that, he says, im-permissibly relieved the State of its burden of proving every element of its ease beyond a reasonable doubt. We agree.
The State has not cited, and we cannot find, a case involving a similar charge.
The record reflects that, during a pre-charge conference, the trial court stated its intent to give the disputed charge. The following exchange took place:
“MR. DAVIS [prosecuting attorney]: You mentioned — and I think it is a statutory provision on the business with the pistol if you don’t have a permit. I think that’s in the Code of Alabama, if I’m not mistaken. I’m pretty sure I’ve seen that before.
“But I guess it bothers me to some extent because of the way the Code puts it in terms of you may presume such and such in a criminal case when, of course, the presumptions are always the other way in a criminal case. And it bothers me that we create a [rebuttable] presumption when we talked about [rebuttable] presumption because as you recall for a long time the Court of Criminal Appeals couldn’t decide exactly with the implied consent statute what the [rebuttable] presumption meant.
“And I’m just a little bit concerned with the wording of your charge when it comes to a pistol without a permit creating a presumption if the person intended to engage or commit the violent crime, but that presumption is rebuttable or whatever— “THE COURT: That’s exactly what Williams [v. State, 34 Ala.App. 410, 42 So.2d 594 (1949) ] says or Wright v. State [, 252 Ala. 46, 39 So.2d 395 (1949) ].
“MR. DAVIS: But I just wanted to bring that to the court’s attention.
“THE COURT: Oh, I understand. I was not going to give it until I read the Wright case.
“MR. DAVIS: If you should decide not to give it, I’m not going to jump up—
“THE COURT: I’m going to give it. That’s my decision to give it.
“MR. DAVIS: That’s your decision.
“MR. JORDAN [defense counsel] I’m going to object to it.
“THE COURT: No kidding. That is what it says. They did not give the — unless evidence proves the killing rebuts a pre *509 sumption in this case, and they said that’s error to give that unless you give the proviso unless the evidence proves it rebuts the presumption. And this Alabama Supreme Court case has not been overturned. Let them have a chance to, okay?”
(R. 321-323.) After the jury was instructed and before it retired for deliberations, Manuel objected to the charge on the ground that it violated his right to due process.
The trial court based its charge on § 13A-11-71, Ala.Code 1975, and also on Wright v. State, 252 Ala. 46, 39 So.2d 395 (1949). Section 13A-11-71, Ala.Code 1975, which was originally enacted in 1936 (See Ala. Acts 1936, Ex.Sess., Act No. 82, p. 51) provides in part:
“In the trial of a person for committing or attempting to commit a crime of violence, the fact that he was armed with a pistol and had no license to carry the same shall be prima facie evidence of his intention to commit said crime of violence.”
In Wright, the Alabama Supreme Court cited Hornsby v. State, 94 Ala. 55, 66, 10 So. 522, 526 (1892) (quoting Mitchell v. State, 60 Ala. 26, 28 (1877)), in support of its holding that it was “‘error to charge the jury ás to the presumptions arising from the use of a deadly weapon, without accompanying such charge with the further statement, “unless the evidence which proves the killing rebuts the presumption.” ’ ” Wright, 252 Ala. at 48, 39 So.2d at 396. However, the whole line of caselaw that Wright was based upon was, in turn, founded upon the premise, set out in Hadley v. State, 55 Ala. 31 (1876), that a homicide defendant bore the onus of proving that a killing was committed in self-defense.
“In Foster’s Crown Law, it is said, ‘In every charge of murder, the fact of killing being first proved, all the circumstances of accident, necessity, or infirmity, are to be satisfactorily proved by the prisoner, unless they arise out of the evidence produced against him; for the law presumeth the fact to have been founded in malice, until the contrary appeareth; and very right it is that the law should so presume.’ The same doctrine is affirmed in all the older writers and adjudications on criminal law. :
“Sir Wha. Blackstone (4 Com. 201) says: “we may take it for a general rule, that all homicide is malicious, and, of course, amounts to murder, unless when justified, excused, or alleviated into manslaughter; and all the circumstances of justification, excuse, or alleviation, it is incumbent on the prisoner to make out to the satisfaction of the court and jury.’ ”
55 Ala. at 37-38.
Today, it is clear that a defendant bears no burden of proving self-defense. Vaughn v. State, 293 Ala. 365, 367-68, 304 So.2d 6, 8 (1974). “Once the issue of self-defense is raised, the State ‘must prove that the accused did not act in self-defense in the sense that the State must prove a prima facie case of unjustified homicide.’” Ex parte Johnson, 433 So.2d 479, 481 (Ala.1983). Additionally, as discussed below, recent opinions, both in federal courts and the courts of this state, have addressed with disapproval jury charges that create mandatory presumptions in favor of the prosecution regarding the existence of certain elements of the offense charged.
This Court, in Beard v. State, 612 So.2d 1335 (Ala.Cr.App.1992), addressed the concerns raised by jury charges that create mandatory presumptions in favor of the State. In Beard, the appellant was accused of capital murder and had been found to be in possession of property belonging to the murder victim. Judge Patterson, writing for this Court, applied the following analysis in holding that it was reversible error to instruct the jury that the possession of property stolen during the course of a crime created a rebuttable presumption that the possessor participated in the crime.
“‘Inferences and presumptions are a staple of our adversary system of factfind-ing. It is often necessary for the trier of fact to determine the existence of an element of the crime — that is, an “ultimate” or “elemental” fact — from the existence of one or more “evidentiary” or “basic” facts. E.g., Barnes v. United. States, 412 U.S. 837, 843-44 [93 S.Ct. 2357, 2361-62, 37 L.Ed.2d 380] [(1973)]; Tot v. United *510 States, 319 U.S. 463, 467 [63 S.Ct. 1241, 1244, 87 L.Ed. 1519] [(1968)]; Mobile J. & K.C.R. Co. v. Turnipseed, 219 U.S. 35, 42 [31 S.Ct. 136, 137, 55 L.Ed. 78] [(1910)]. The value of these evidentiary devices, and their validity under the Due Process Clause, vary from case to case, however, depending on the strength of the connection between the particular basic and elemental facts involved and on the degree to which the device curtails the factfinder’s freedom to assess the evidence independently. Nonetheless, in criminal cases, the ultimate test of any device’s constitutional validity in a given case remains constant: the device must not undermine the factfin-der’s responsibility at trial, based on evidence adduced by the State, to find the ultimate facts beyond a reasonable doubt. See In re Winship, 397 U.S. 358, 364 [90 S.Ct. 1068, 1072, 25 L.Ed.2d 368] [(1970)]; Mullaney v. Wilbur, 421 U.S. [684,] at 702-703, n. 31 [95 S.Ct. 1881, 1891-92, n. 31, 44 L.Ed.2d 508] [(1975)].
‘“The most common evidentiary device is the entirely permissive inference or presumption, which allows — but does not require — the trier of fact to infer the elemental fact from the proof by the prosecutor of the basic one and which places no burden of any kind upon the defendant. See, e.g., Barnes v. United States, supra, [412 U.S.], at 840 n. 3 [93 S.Ct. at 2360 n. 3]. ...
Because this permissive presumption leaves the trier of fact free to credit or reject the inference and does not shift the burden of proof, it affects the application of the “beyond a reasonable doubt” standard only if, under the facts of the case, there is no rational way the trier could make the connection permitted by the inference. For only in that situation is there any risk that an explanation of the permissible inference to a jury, or its use by a jury, has caused the presumptively rational factfinder to make an erroneous factual determination.
“‘A mandatory presumption is a far more troublesome evidentiary device. For it may affect not only the strength of the “no reasonable doubt” burden but also the placement of that burden; it tells the trier that he or they must find the elemental fact upon proof of the basic fact, at least until the defendant has come forward with some evidence to rebut the presumed connection between the two facts. E.g., Turner v. United States, [396 U.S. 398,] 401-402, and n. 1 [90 S.Ct. 642, 644-45, 24 L.Ed.2d 610] [(1970)]; Leary v. United States, 395 U.S. 6, 30 [89 S.Ct. 1532, 1545, 23 L.Ed.2d 57] [(1969)]; United States v. Romano, 382 U.S. 136, 137, and n. 4, 138, 143 [86 S.Ct.279, 280, and n. 4, 280, 283, 15 L.Ed.2d 210] [(1965)]; Tot v. United States, supra [319 U.S.], at 469 [63 S.Ct. at 1245]. In this situation, the Court has generally examined the presumption on its face to determine the extent to which the basic and elemental facts coincide. E.g., Turner v. United States, supra [396 U.S.], at 408-18 [90 S.Ct. at 648-53]; Leary v. United States, supra [395 U.S.], at 45-52 [89 S.Ct. at 1552-57]; United States v. Romano, supra [382 U.S.], at 140-141 [86 S.Ct. at 281-82]; Tot v. United States, 319 U.S., at 468 [63 S.Ct., at 1245]. To the extent that the trier of fact is forced to abide by the presumption, and may not reject it based on an independent evaluation of the particular facts presented by the State, the analysis of the presumption’s constitutional validity is logically divorced from those facts based on the presumption’s accuracy in the run of cases. It is for this reason that the Court has held it irrelevant in analyzing a mandatory presumption, but not in analyzing a purely permissible one, that there is ample evidence other than the presumption to support a conviction. E.g., Turner v. United States, 396 U.S., at 407 [90 S.Ct. at 647]; Leary v. United States, 395 U.S., at 31-32 [89 S.Ct., at 1545-46]; United States v. Romano, 382 U.S. at 138-139 [86 S.Ct. at 280-281]’ ”
Beard, 612 So.2d at 1342-43 (quoting County Court of Ulster County, New York v. Allen, 442 U.S. 140, 156-60, 99 S.Ct. 2213, 2224-26, 60 L.Ed.2d 777 (1979) (footnotes omitted, emphasis in original)). For purposes of this case, we apply the same analysis used in Beard.
Here, in light of the challenged jury instruction, the underlying fact supporting the *511 presumption is Manuel’s possession of a pistol without a license. The presumption, that the jury was instructed to engage in from the proof of that fact was that Manuel had the requisite intent to commit a crime of violence. We do note that the trial court instructed the jury that Manuel did not bear the burden of proving that he acted in self-defense.
We must, therefore, determine the effect of the challenged instruction on a reasonable juror in light of the entire jury charge.
“ ‘In determining whether the instruction creates a mandatory presumption or a permissive inference, we initially focus on the specific language that .is challenged. If a jury could reasonably have understood that. portion of the jury charge as creating a presumption that relieves the State of its burden of persuasion on an element of the offense, the potentially offending words must be considered in the context of the entire charge. “Other instructions might explain the infirm language to the extent that a reasonable juror could not have considered the charge to have created an unconstitutional presumption.” [Francis v. Franklin, 471 U.S. 307 [105 S.Ct. 1965, 85 L.Ed.2d 344] (1985)] (citing Cupp v. Naughten, 414 U.S. 141, 147 [94 S.Ct. 396, 400, 38 L.Ed.2d 368] ... (1973)).’
“Coleman v. Butler, 816 F.2d 1046, 1048 (5th Cir.1987). See also Carella v. California, 491 U.S. 263, 265, 109 S.Ct 2419, 2420, 105 L.Ed.2d 218 (1989) (wherein the Court stated that it ‘explained in Francis [v. Franklin, 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985),] and Sandstrom [v. Montana, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979),] that courts should ask whether the presumption in question is mandatory, that is, whether the specific instruction, both alone and in the context of the overall charge, could have been understood by reasonable jurors to require them to find the presumed fact if the State proves certain predicate facts’).”
Beard, 612 So.2d at 1343-44.
In examining the contested instruction, we find that it creates a mandatory presumption because a reasonable juror could have understood it to require a finding that Manuel had the specific criminal intent to commit murder if the prosecution proved that he was carrying a pistol without a license. In other words, a reasonable juror could , have understood it to create a presumption that relieved the prosecution of its burden of proving the required elements of the offense of murder once it proved that he was not licensed to carry the pistol used in the slaying. See Francis v. Franklin, 471 U.S. 307, 315-316, 105 S.Ct. 1965, 1971-72, 85 L.Ed.2d 344 (1985). The instruction is mandatory and not permissive, because it instructs the jury that proof of the underlying fact shall be prima facie evidence of intent to commit murder.
The next step of our analysis is to examine the challenged instruction in light of the entire jury charge.
“Our inquiry does not end with our review of the isolated charge; we must consider it in the context of the charge as a whole. Id. at 315, 105 S.Ct. at 1971; Coleman v. Butler, 816 F.2d at 1048.
“ ‘A mandatory presumption may be either conclusive or rebuttable. A conclusive presumption removes the presumed element from the ease once the State has proved the predicate facts giving rise to the presumption. A rebutta-ble presumption does not remove the presumed element from the case but nevertheless requires the jury to find the presumed element unless the defendant persuades the jury that such a finding is unwarranted. See Sandstrom v. Montana, 442 U.S. 510 [99 S.Ct. 2450, 61 L.Ed.2d 39] (1979).’
“Franklin, 471 U.S. at 314, n. 2, 105 S.Ct. at 1971, n. 2. See also Miller v. Norvell, 775 F.2d 1572, 1575 (11th Cir.1985), reh’g denied, 780 F.2d 1033 (1985), cert. denied, 476 U.S. 1126, 106 S.Ct.. 1995, 90 L.Ed.2d 675 (1986) (wherein the court stated that the difference between a permissive inference and a mandatory rebuttable presumption is ‘that, unlike a permissive inference, a mandatory rebuttable presumption requires a jury to find that the presumed fact follows the proven fact unless the defendant produces evidence to rebut the *512 existence of the presumed fact’) (emphasis in original).
“Yet, simply because a reasonable juror could have understood the instructions together to create a mandatory rebuttable presumption, ‘the instructions [were] no less constitutionally infirm,’ Franklin, 471 U.S. at 317, 105 S.Ct. at 1972.
“‘A mandatory rebuttable presumption does not remove the presumed element from the case if the State proves the predicate facts, but it nonetheless relieves the State of the affirmative burden of persuasion on the presumed element by instructing the jury that it must find the presumed element unless the defendant persuades the jury not to make such a finding. A mandatory re-buttable presumption is perhaps less onerous from the defendant’s perspective, but it is no less unconstitutional. Our cases make clear that “[s]uch shifting of the burden of persuasion with respect to a fact which the State deems so important that it must be either proved or presumed is impermissible under the Due Process Clause.” Patterson v. New York, 432 U.S. [197], 215 [97 S.Ct. 2319, 2329, 53 L.Ed.2d 281] [(1977)].’
Beard, 612 So.2d at 1344.
The contested instruction states that the presumption can be rebutted by the “evidence which proves the killing.” Although this language does not directly place the burden on the defense to rebut the presumption, the practical effect in a self-defense ease, at the very least, is to lighten the prosecution’s burden of proof as to the criminal intent of the defendant (i.e., that the killing was not justified). If the presumption in the challenged instruction was valid, we can think of no instance, in light of the defendant’s admission of intentional conduct that caused the killing, in which the prosecution would seek to introduce any additional “evidence which proves the killing.” The State’s introduction of evidence that would rebut “prima facie evidence of intent to commit a crime of violence,” (e.g., murder) would defeat the purpose of a criminal prosecution. The defendant in this scenario would already have admitted to killing the victim by asserting self-defense and the defendant’s criminal intent would be presumed by any juror who followed the trial court’s instructions. The practical effect of this presumption would be to compel the defendant to present evidence to prove that the killing was justified. This is impermissible as a matter of law.
The State urges us to consider the charge in light of the trial court’s instructions that Manuel was presumed innocent of the charge of murder and any lesser included charges; that the presumption of innocence attended Manuel as a matter of evidence throughout the trial unless the State proved his guilt beyond a reasonable doubt; that the indictment sets out what the State must prove beyond a reasonable doubt regarding the nature of the charges against Manuel; that Manuel has interjected self-defense into the case, but that the burden was not on him to prove the defense; that a person acts intentionally with respect to the death of a person when his purpose is to cause the result or to engage in that conduct; and that the jury use its common sense in determining the facts.
Virtually the same argument was made to this court in Beard, where we held:
“We do not consider that these instructions emphasized by the attorney general, when taken together, could have led a reasonable juror to believe that he was permitted, rather than required, to draw the conclusion directed by the trial court. See [Francis v. Franklin,] 471 U.S. at 315-16, 105 S.Ct. at 1971-72. Moreover, we cannot find how they ‘explained the proper allocation of burdens with sufficient clarity that any ambiguity in the particular language challenged could not have been understood by a reasonable juror as shifting the burden of persuasion,’ id. at 319, 105 S.Ct. at 1973. For example, ‘[g]eneral instructions on the State’s burden of persuasion and the defendant’s presumption of innocence are not “rhetorically inconsistent with a conclusion or burden-shifting presumption,” because “[t]he jury could have interpreted the two sets of instructions as indicating that the presumption was a means by which proof beyond a reasonable doubt as to [the elements of murder-bur *513 glary] could be satisfied,” ’ id. at 319, 105 S.Ct. at 1974 (quoting Sandstrom, 442 U.S. at 518-19, n. 7, 99 S.Ct. at 2456, n. 7).”
612 So.2d at 1345.
In light of the above, we must conclude that the contested instruction created an impermissible mandatory rebuttable presumption that a reasonable juror could have interpreted as alleviating the State’s burden of proving beyond a reasonable doubt every element of the crime for which he was charged. See In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970). Reviewing the instruction on its face, we find that proof of a defendant’s possession of a pistol without a.license is clearly insufficient to support the presumption that the defendant had the criminal intent to commit murder where self-defense has been injected as a defense.
“Put another way, the instant presumption undermined the jury’s responsibility at trial, based on evidence adduced by the prosecution, to find the ultimate facts beyond a reasonable doubt. See County Court of Ulster County, 442 U.S. at 156, 99 S.Ct. at 2224. By its language in the context of the charge as a whole, the instant presumption did not permit a reasonable juror to reject it based on an independent evaluation of the other evidence presented by- the prosecution, see id. at 159, 99 S.Ct. at 2226 ...”
Beard, 612 So.2d at 1345-46.
The State argues that, even if the instruction was error, it was harmless error. In Freeman v. State, 555 So.2d 196 (Ala.Cr.App.1988), aff'd, 555 So.2d 215 (Ala.1989), cert. denied, 496 U.S. 912, 110 S.Ct. 2604, 110 L.Ed.2d 284 (1990), this Court held that a jury instruction that created an impermissible presumption that alleviated the State of its burden of proof may, nonetheless, have constituted harmless error wheré (1) the erroneous instruction was applied to an element of the crime that was not at issue at trial, or (2) where the evidence as to the defendant’s guilt was overwhelming. Id. at. 209. Although a contemporaneous opinion issued by the United States Supreme Court raises'doubt as to whether a harmless error analysis would even be proper in the present casewe hold that harmless error would not apply under the Freeman rule.
The State argues that intent was, not an issue at trial because Manuel, by asserting self-defense, admitted that his conduct was *514 intentional. We find this argument to be without merit. Criminal intent is essentially the only issue to be determined by the jury when a defendant admits that he caused the death of the victim. The jury must determine only if the killing was justified. In other words, although Manuel argued that he intended to shoot the victim, the jury must still have to determine whether his intent was criminal.
The State alternately argues that the jury instruction was harmless because, it says, the evidence of Manuel’s guilt was overwhelming. While the State presented several witnesses whose testimony tended to suggest that Manuel did not shoot Strickland in self-defense, none of these witnesses testified as to what happened immediately before the shot was fired. They all testified that they had left the room after they saw Manuel draw his pistol and demand that Strickland raise his hands. Manuel testified that he was trying to make his way to the door so that he could leave the house. There was conflicting testimony as to whether Strickland complied with Manuel’s demands. Manuel testified that Strickland made a motion as if he were reaching for a weapon just before Manuel fired the shot. Manuel testified that he was afraid because he did not know Strickland, because Strickland had entered the house without knocking, and because Strickland was acting hostile towards him. Manuel further testified that he pulled the trigger out of fear for his safety.
Based on the above, we cannot confidently conclude that the State presented overwhelming evidence of guilt to the extent that the trial court’s improper instruction could be considered harmless. Accordingly, we must reverse Manuel’s conviction.
For the above-stated reasons, the judgment of the trial court is due to be reversed, and the cause remanded to the trial court for proceedings consistent with this opinion.
REVERSED AND REMANDED.
All the Judges concur.

. In Carella v. California, 491 U.S. 263, 109 S.Ct. 2419, 105 L.Ed.2d 218 (1989), the Supreme Court elected not to apply the harmless error doctrine in a case involving a mandatory conclusive presumption, stating:
"In Rose v. Clark, 478 U.S. 570 [106 S.Ct. 3101, 92 L.Ed.2d 460] (1986), we again said that a Sandstrom error is subject to the harmless-error rule. 'Nor is a Sandstrom error equivalent to a directed verdict for the State. When a jury is instructed to presume malice from predicate facts, it still must find the existence of those facts beyond a reasonable doubt. Connecticut v. Johnson, 460 U.S. 73, 96-97 [103 S.Ct. 969, 982-983, 74 L.Ed.2d 823] (1983) (Powell, J., dissenting). In many cases, the predicate facts conclusively establish intent, so that no rational jury could find that the defendant committed the relevant criminal act but did not intend to cause injury. ... In that event the erroneous instruction is simply superfluous: the jury has found, in Winship’s words, "every fact necessary" to establish every element of the offense beyond a reasonable doubt.' Rose, supra, at 580-81 [106 S.Ct. at 3107] (footnote and citations omitted).”
Id. at 266, 109 S.Ct. at 2421 (emphasis supplied). In a concurring opinion, Justice Scalia, with whom Justices Brennan, Marshall, and Black-mun joined, wrote:
"These (judicially created) principles necessarily circumscribe the availability of harmless-error analysis when a jury has been instructed to apply a conclusive presumption. If the Judge in the present case had instructed the jury, ‘You are to apply a conclusive presumption that Carella embezzled the rental car if you find that he has blue eyes and lives in the United States,’ it would not matter, for purposes of assuring Carella his jury-trial right, whether the record contained overwhelming evidence that he in fact embezzled the car. For nothing in the instruction would have instructed the jury, or even permitted it, to consider and apply that evidence in reaching its verdict, and the problem would not be cured by an appellate court's determination that the record evidence unmistakably established guilt, for that would represent a finding of fact by judges, not by a jury.”
Id. at 269, 109 S.Ct. at 2422-23 (emphasis added).
While the presumption in the present case was not conclusive as it was in Carella, the remoteness between the necessary predicate fact, and the presumption it generates is similar to the scenario described in Carella.