UNITED STATES of America,
Plaintiff-Appellee,

v.

Neil SIMMONS, Nelson Valladares, Leroy
Williams, Defendants-Appellants.

No. 82–8770.

United States Court of Appeals,
Eleventh Circuit.

Feb. 24, 1984.

Rehearing and Rehearing En Banc
Denied March 28, 1984.

C. James McCallar, Jr., H. Joseph Chandler, Jr., Savannah, Ga., for Simmons.

Ray Gaskin, Donald B. Lowe, III, Savannah, Ga., for Williams.

Allen R. Smith, Winter Haven, Fla., for Valladares.

Melissa S. Mundell, Asst. U.S. Atty., Savannah, Ga., Mervyn Hamburg, Appellate Section, Crim. Div., Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before JOHNSON and ANDERSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

TUTTLE, Senior Circuit Judge:

This appeal presents claims by the three appellants of which only those of Simmons warrant discussion. Based on the evidence, reviewed in the light most favorable to the government, accepting all reasonable inferences from the direct and circumstantial evidence adduced, the jury could have found the following facts:

Nelson Valladares of Miami, Florida had a meeting in Savannah, Georgia, to obtain the services of one David Blackston to provide his organization for offloading marijuana in Georgia (subsequently extended to South Carolina.) The Blackston organization obtained the help of appellant Williams for a payment of $10,000 to help offload the marijuana at Frogmire, South Carolina and to drive a trailer truck load into Georgia or to a stash house in South Carolina. This offloading produced approximately 600 bales of marijuana weighing approximately 30,000 to 35,000 pounds. Williams helped throw the bales weighing between 40 and 80 pounds onto the truck which he then drove to the stash house.

Anticipating a second shipment, David Ingram, a lieutenant of Blackston's, approached Simmons near Savannah, Georgia to seek his help. Simmons operated Georgia Truck Center, a truck repair business. Ingram told Simmons he needed a tractor-trailer to haul marijuana, and that he would pay $5,000 for Simmons's help to acquire the rig and conceal identity of the purchaser. He gave $3,000 up front to Simmons who found a suitable rig (consisting of tractor and 40-foot trailer) for $11,050, which he delivered to Ingram upon payment of that amount. Simmons told the seller he did not know the identity of the purchaser and told him to pick any name to be inserted in the bill of sale. A false name was inserted in the bill and the truck was fitted with a stolen tag furnished by In-

gram. Ingram drove the rig to Frogmire where it was loaded with between 12,000 and 17,000 pounds [1] of marijuana and later parked at Williams's residence in Georgia, before it was intercepted and confiscated.

As stated above, we affirm the convictions and sentences of Valladares and Williams without any need to discuss the several grounds of their appeals.

Simmons raises two grounds in his appeal that require our analysis:

1) Did the government carry its burden of proof in a case in which Simmons was charged with conspiracy to possess in excess of 1,000 pounds of marijuana with intent to distribute in violation of 21 U.S.C. § 846?

2) Did a variance between the allegations as to one of the overt acts alleged in the indictment and the proof with respect to that overt act constitute prejudicial error?

## I. ELEMENTS OF PROOF

The question as to the sufficiency of the proof here depends upon whether the government was required to prove that Simmons knew that the marijuana conspiracy was in fact a conspiracy to possess with intent to distribute in excess of 1,000 pounds of marijuana. Appellant contends that an essential element of this offense is that he knew that the quantity of marijuana to be possessed exceeded 1,000 pounds. The government argues that analysis of the several provisions of Section 841 makes clear that it has no such burden. We concur in this view.

Initially, appellant contends that for him to be convicted of the conspiracy, he must have the knowledge of the conspiracy and must intend to join and that he has the same criminal intent necessary for the substantive offense. He relies on *Ingram v. United States*, 360 U.S. 672 at p. 678, 79 S.Ct. 1314 at p. 1319, 3 L.Ed.2d 1503, 1508 (1959). There, the Supreme Court said: "Conspiracy to commit a particular substantive offense cannot exist without at least the degree of criminal intent necessary for

---

1. This figure is arrived at by deducting from the weight of the merchandise off-loaded, 35,-000 to 40,000 pounds, the estimated load on the smaller vehicle, 13,000 pounds.

the substantive offense itself." 360 U.S. at 678, 79 S.Ct. at 1319. The Court of Appeals for the Fifth Circuit cited *Ingram* in an opinion which stated:

> We begin by the premise that to be convicted of an unlawful conspiracy a defendant must have knowledge of the conspiracy and must intend to join, or associate himself with the objectives of, the conspiracy. Moreover, "conspiracy to commit a particular substantive offense cannot exist without *at least* that degree of criminal intent necessary for the substantive offense," citing *Ingram, supra.*

*United States v. Malatesta,* 590 F.2d 1379 (1979).[2]

■ We agree with the appellant that the government had the burden to prove at least the degree of criminal intent that was required for conviction of the substantive offense. We must, therefore, decide whether it is an essential part of the proof of the substantive offense to violate this section of the statute that the defendant was aware of the fact that the amount of the marijuana he was charged with possessing with intent to distribute involved in excess of 1,000 pounds.

In this case, Simmons was indicted in Count 3 of conspiracy to violate Section 841(a)(1), (b)(6). At the close of all the evidence, Simmons's counsel moved the court for a judgment of acquittal on the conspiracy count on the ground that there was insufficient evidence on the essential element of Simmons's knowledge of an amount of marijuana in excess of 1,000 pounds. The court denied this motion, but earlier in the case the court had ordered a verdict of acquittal on Count 2, the substantive possession charge in the indictment, which Simmons was accused of conspiring to commit in Count 3. The basis of the court's ruling on this motion was that there was insufficient evidence to prove that Simmons had knowledge of an amount of marijuana in excess of 1,000 pounds.

Simmons argues that it was inconsistent for the trial court not to have dismissed the conspiracy count, once it found a failure of proof with respect to the substantive count. However, the fact that the trial court may have mistakenly dismissed the substantive count only benefitted Simmons. It should not bind this Court in our effort to determine whether the statute was correctly interpreted by the court.

Section 841 provides in material part as follows:

> (a) ... It shall be unlawful for any person knowingly or intentionally (1) to ... possess with intent to ... distribute ... a controlled substance;
>
> (b)(6) In the case of a violation of subsection (a) of this section involving a quantity of marijuana exceeding 1,000 pounds, such person shall be sentenced to a term of imprisonment of not more than 15 years ....

Subsection (b)(6) was added by Congress in 1980 to amend the provisions of subsection (b)(1)(B) which had provided for a sentence in a marijuana case of not more than five years. The legislative history demonstrates the purpose of Congress to enhance the penalty that could be imposed when substantial amounts were involved. *See* Report by the Senate Labor & Human Resources Committee, Infant Formula Act of 1980,[3] 96th Cong. 2d Sess. Aug. 26, 1980, p. 14.

The statute makes it a crime for a person to possess with intent to distribute a controlled substance. It then provides that if the controlled substance is marijuana, and the crime (of possessing with intent to distribute marijuana) "involv[es] a quantity of marijuana exceeding 1,000 pounds" punishment of a maximum of 15 years is authorized. This simply means that the crime can be proved without any consideration of the amount involved, but then if the proof

---

**2.** In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), the court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Id.* at 1209.

**3.** The new penalty provision in subsection (6) was a rider to the Infant Formula Act of 1980.

shows that more than 1,000 pounds was "involv[ed]" the limit on the maximum sentence is 15 instead of five years.

■ We conclude, therefore, that the United States need not prove knowledge or intent of the accused to possess in excess of 1,000 pounds to be subject to the more severe sentence. To be subject to it, the government need only show that the amount knowingly possessed with intent to distribute exceeded 1,000 pounds.

Since conviction of the substantive crime does not require knowledge of the amount of marijuana to be possessed, proof of the conspiracy to commit the substantive offense does not include knowledge of the amount of marijuana to be possessed. The 1,000 pound provision is applicable only to the sentencing phase.

We conclude, therefore, that it is not necessary for us to decide whether the jury could have found that the circumstances surrounding Simmons's participation in the conspiracy established his knowledge that in excess of 1,000 pounds of marijuana was to be "involv[ed]."

## II. VARIANCE BETWEEN ALLEGATIONS AND PROOF OF OVERT ACT

The conspiracy indictment included allegations of the commission of 17 overt acts. Among these was overt act 11, which charged: "During the middle part of January, 1981 Neil Simmons received approximately $3,000 from James Ingram, Sr. as payment for securing false registration for a tractor-trailer truck for use in transporting marijuana." In his appeal, Simmons complains of a variance between this allegation and the proof at the trial where Ingram testified that he gave Simmons $3,000 for "plans to bring the truck with marijuana to put on his yard to store it."

Simmons contends that this evidence amounted to an illegal amendment to the indictment. However, appellant fails to note the original testimony by Ingram as to the purpose for which he introduced Blackston to Simmons. In response to the question, "what was the purpose of you introducing him to David Blackston?", Ingram answered: "The purpose was to buy a tractor and trailer and looking for a place to store some loaded trucks with marijuana." He further testified that Simmons was to be sure that the truck he acquired was not to be titled in Blackston's name, thus meeting the allegation in the indictment as to the use of the $3,000 "as payment for securing false registration for a tractor-trailer truck for use in transporting marijuana." Also, under cross-examination, Ingram testified that the $3,000 payment was "for whatever it took for him not to say nothing, to get the truck ready to go get the load of marijuana."

■ Differing from most conspiracies, there is no requirement that a conviction of conspiracy to violate Section 846 depend on the proof of the commission of an overt act in addition to proof of the agreement to violate the law. *United States v. Badolato,* 701 F.2d 915 (11th Cir.1983); *United States v. Ramos,* 666 F.2d 469, 475 (11th Cir.1982); *United States v. Futch,* 637 F.2d 386, 389 n. 5 (5th Cir.1981). In light of this, it is difficult to see how the appellant can claim reversible error because he contends that the government failed to prove the facts alleged as constituting one of the overt acts which were included in the indictment. Moreover, even if the testimony of Ingram taken as a whole on direct and cross-examination be considered as constituting a variance from the allegations as to overt act. no. 11, it was not a variance that would cause a court to find any prejudicial error. It is only when a variance between the overt act as charged and as proved constitutes prejudicial error and when it affects the substantial rights of the accused that he can successfully challenge it on appeal. *Berger v. United States,* 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935); *United States v. Solomon,* 686 F.2d 863 (11th Cir. 1982). Here, Ingram's testimony amply proved that the $3,000 sum was given in part for the acquisition of a motor trailer as to which a false bill of sale was to be prepared and on which a stolen tag was to

be placed. That, in substance, corresponded with the allegations in the indictment. *See United States v. Enstam,* 622 F.2d 857, 867 (5th Cir.1980), *cert. denied,* 450 U.S. 912, 101 S.Ct. 1351, 67 L.Ed.2d 336 (1981).

Having carefully considered the other issues raised by the parties, we conclude that the judgments and sentences must be

AFFIRMED.