**UNITED STATES of America, Appellee,**

v.

**Schnejer Zalman GURARY, Nochum Sternberg and Esther Sternberg, Defendants-Appellants.**

**Nos. 90, 100, 101, Dockets 88–1114, 88–1115, 88–1121.**

United States Court of Appeals, Second Circuit.

Argued Sept. 7, 1988.

Decided Oct. 24, 1988.

Rudolph W. Giuliani, U.S. Atty., S.D.N.Y. (Linda Imes, David Spears, John F. Savarese, Asst. U.S. Attys., of counsel), for appellee.

Cassidy, Larroca & Lewin, Washington, D.C. (Nathan Lewin, J.R. Caldwell, Jr., Anne M. Coughlin, of counsel), for defendant-appellant Schnejer Z. Gurary.

Paul K. Rooney, New York City, for defendant-appellant Nochum Sternberg.

Howard, Darby & Levin, New York City (Sara E. Moss, of counsel), for defendant-appellant Esther Sternberg.

Before KEARSE, VAN GRAAFEILAND, C.JJ., and POLLACK, District Judge.*

POLLACK, District Judge:

Defendants Schnejer Zalman Gurary, Nochum Sternberg and Esther Sternberg appeal from judgments of conviction on 45 counts of conspiracy and aiding and assisting the filing of false corporate and individual tax returns. Convictions were entered on March 9, 1988 after a jury trial before the Honorable John M. Walker, United States District Judge for the Southern District of New York.

Defendants appeal their convictions on the basis that: (1) the evidence was not sufficient to establish intent to violate the tax laws; (2) the trial court improperly instructed the jury on conscious avoidance; (3) the trial court interfered with the defendants' right to a fair trial by questioning witnesses; and, (4) the Part I judge violated the Speedy Trial Act by extending the time in which to return an indictment. We affirm the judgments of conviction.

## BACKGROUND

The Government filed a complaint against Gurary and Nochum Sternberg (Gurary's son-in-law) on April 2, 1986, charging them with one count of a conspiracy to defraud the United States in violation of 18 U.S.C. § 371, and three counts of currency reporting violations under 31 U.S.C. §§ 5313 and 5322 in connection with tax returns filed by Irwin Feiner and his companies. Fifteen days later the Government applied for a sixty-day continuance of the time in which to return an indictment or hold a preliminary hearing pursuant to the Speedy Trial Act, 18 U.S.C. § 3161(h)(8)(A). Judge Kevin T. Duffy, sitting in Part I, granted the continuance, finding delay of the preliminary hearing was "indispensable to the interests of justice." This Court

---

* Honorable Milton Pollack, Senior United States District Judge for the Southern District of New York, sitting by designation.

rejected defendants' interlocutory appeal from Judge Duffy's order.[1]

On June 18, 1986, a grand jury returned an indictment[2] charging that all three defendants conspired to defraud the United States in violation of 18 U.S.C. § 371; aided and assisted the presentation of false corporate income tax returns in violation of 26 U.S.C. § 7206(2); and aided and assisted the principals of certain corporations in the presentation of false individual income tax returns, in violation of 26 U.S.C. § 7206(2).

At trial, the Government presented evidence indicating that, from 1978 to 1986, Gurary and the Sternbergs sold invoices to corporations, directly and through middlemen, falsely reflecting that one of the defendants' companies had sold goods to the invoice-purchasing company. Principals of those companies would then provide defendants with a company check in payment of the fictitious invoice. Defendants returned cash to the principal, in the amount of the check less a commission of five to fifteen percent for the defendants and their middlemen. No actual goods were involved.

Corporations purchasing the fictitious invoices included the non-existent goods in their calculations of cost-of-goods-sold for tax purposes, fraudulently misstating their taxable income. The principals involved converted part of the cash received to their own personal use without declaring those funds as income on their yearly tax returns. The substantive counts in the indictment relate to the corporate and individual tax returns filed by invoice purchasers and their principals.

## DISCUSSION

### I. Intent

Defendants contend the evidence presented by the Government was insufficient to support a finding that Gurary and the Sternbergs intended to violate the tax laws. Both the 26 U.S.C. § 7206(2) substantive counts and the 18 U.S.C. § 371 conspiracy count require a showing of specific intent. The specific standards for each, however, vary.

Section 7206(2) provides that:

Any person who ... [w]illfully aids or assists in, or procures, counsels, or advises the preparation or presentation under, or in connection with any matter arising under, the internal revenue laws, of a return, affidavit, claim, or other document, which is fraudulent or is false as to any material matter, whether or not such falsity or fraud is with the knowledge or consent of the person authorized or required to present such return, affidavit, claim, or document ... shall be guilty of a felony....

In the context of this statute, "willfully" means an intentional violation of a known legal duty. *See, e.g., United States v. Bishop,* 412 U.S. 346, 93 S.Ct. 2008, 36 L.Ed.2d 941 (1973); *United States v. Pomponio,* 429 U.S. 10, 97 S.Ct. 22, 50 L.Ed.2d 12 (1976).

The crux of defendants' argument is that the conduct of Gurary and the Sternbergs, however reprehensible, was not directed at the tax laws. More specifically, defendants claim they had no reason to know corporate invoice-purchasers would commit tax fraud, since merchants in the garment industry use both cash and false invoices for purposes other than tax evasion. Instead, defendants contend they believed fictitious invoices were used as a ruse to avoid corporate bookkeepers and bookkeeping procedures which restrict the issuance of checks for cash. Similarly, defendants assert they had no reason to believe corporate principals would pocket cash received and fail to report the money as income on their individual income tax returns.

In considering whether the jury's verdict should be overturned, we must view the evidence and make all permissible infer-

---

**1.** 793 F.2d 468 (2d Cir.1986).

**2.** The first Indictment was returned on June 18, 1986, and the first superseding Indictment was filed on November 17, 1986, and a second superseding indictment on May 6, 1987. Trial proceeded under the second superseding indictment, although the government voluntarily dismissed six of the counts on November 19, 1987.

ences in the light most favorable to the Government. *United States v. Carson*, 702 F.2d 351 (2d Cir.), *cert. denied*, 462 U.S. 1108, 103 S.Ct. 2456, 77 L.Ed.2d 1335 (1983); *United States v. Ciambrone*, 787 F.2d 799 (2d Cir.), *cert. denied*, 479 U.S. 1017, 107 S.Ct. 668, 93 L.Ed.2d 720 (1986); *United States v. Heinemann*, 801 F.2d 86 (2d Cir.1986), *cert. denied*, 479 U.S. 1094, 107 S.Ct. 1308, 94 L.Ed.2d 163 (1987). The question presented here is whether the Government presented any evidence from which the jury could infer that defendants knew their scheme would result in the filing of false corporate and individual tax returns, and deliberately proceeded with their scheme in the face of that knowledge. We hold the Government presented such evidence.

Evidence presented by the Government tends to show that over an eight-year period defendants sold, directly and through middlemen, fictitious invoices with a face value of over $136 million. For each transaction defendants deducted a fee of five to fifteen percent and split that fee with middlemen. Defendants created and dissolved thirty-six different corporations, opened and closed bank accounts for the processing of checks and funds, yet conducted no substantive business through those corporations—only the sale of invoices. Fictitious invoices were prepared and revised in accordance with purchasers' specifications. Each and every purchaser testifying at trial indicated that they included the fictitious invoices in calculating the deduction for cost-of-goods-sold on their corporate tax returns.

In addition to this indirect evidence, the Government presented direct evidence indicating defendants knew the fictitious invoices were used to prepare fraudulent tax returns and nevertheless proceeded with the scheme. Irving Katcher testified that he had been a middleman in defendants' sales of fictitious invoices. Katcher recounted a conversation where Gurary, in response to a question on why people would want to buy invoices, responded that invoice purchasers could "save money on taxes by building up the inventory, or ... buy piece goods and get the dollar amount

back and use it either to pay off buyers or expand [the purchaser's] business or keep it personally." Tr. 1934. Samuel Mandel, who purchased invoices through his company Randy Hall, Inc., testified that on one occasion Nochum Sternberg advised Mandel that Gurary wanted to speak with him. At the meeting and in the presence of Nochum Sternberg, Gurary stated that one of Mandel's partners was in trouble with the IRS and inquired whether the partner would tell the IRS where he had been receiving his cash. Employees of another invoice purchaser ("Ahead By a Length" and Irwin Feiner), testified that they instructed Esther Sternberg on correlating checks with invoices and on completing invoices to comport with the type of goods Ahead By a Length purchased in its business.

This undercuts defendants' contentions that they did not know invoices would be used to file false returns or intend to assist in the violation of tax laws. Several factors in particular would allow a jury to infer defendants knew the fictitious invoices were being used as support documentation for fraudulent tax returns and not merely as a ruse to get corporate bookkeepers to issue checks: the length and extent of the scheme; the explanation of uses for fictitious invoices made to Katcher; the meeting between Nochum Sternberg, Gurary and Mandel to discuss the IRS investigation of Mandel's partner; and Esther Sternberg's conversations with invoice purchasers, including the corporate bookkeeper of one purchaser, regarding the descriptions included in the invoices. Defendants' continuation of the scheme in the face of that knowledge is indicative of an intent to aid and assist in the filing of fraudulent corporate tax returns.

The evidence also supports defendants' conviction for aiding and assisting the filing of corporate principals' fraudulent tax returns. Defendants acknowledge that purchasers used fictitious invoices to withdraw cash from their company in instances where established corporate procedures would not allow withdrawal. From this acknowledged purpose and the other evi-

dence presented, a jury could reasonably infer that defendants knew the principals of invoice purchasers would misappropriate the cash and fail to include it on their taxes.

On the conspiracy count, defendants contest the sufficiency of evidence only on the question of intent, not the agreement and overt-act elements of conspiracy. A conviction for conspiracy under 18 U.S.C. § 371 requires a showing of intent; "conspiracy to commit a particular substantive offense cannot exist without *at least* the degree of criminal intent necessary for the substantive offense itself." *Ingram v. United States,* 360 U.S. 672, 678, 79 S.Ct. 1314, 1319, 3 L.Ed.2d 1503 (1959), quoting *Developments in the Law—Criminal Conspiracy,* 72 Harv.L.Rev. 920, 939 (1959).

The conspiracy count specified the following as illegal objects of the conspiracy: (i) defrauding United States of income taxes and of truthful and accurate information relating to tax liability, by impeding, obstructing and defeating the lawful functions of the IRS in the ascertainment, evaluation, assessment, and collection of taxes and the auditing and review of income tax returns and documentation relating to those returns; (ii) attempting to evade and defeat corporate and personal income taxes of the invoice purchasers and their principals in violation of 26 U.S.C. § 7201; and (iii) aiding and assisting in the filing of false returns. The intent requirement for each object requires separate analysis.

18 U.S.C. § 371[3] encompasses not only conspiracies that involve loss of Government funds, but also conspiracies for the purpose of impairing, obstructing or defeating the lawful function of any department of Government. *United States v. Johnson,* 383 U.S. 169, 172, 86 S.Ct. 749, 751, 15 L.Ed.2d 681 (1966). Furthermore, intent to defraud the United States may be

incidental to another primary motivation or purpose. *United States v. Southland Corp.,* 760 F.2d 1366, 1373 (2d Cir.), *cert. denied,* 474 U.S. 825, 106 S.Ct. 82, 88 L.Ed. 2d 67 (1985).

The level of intent required to show a conspiracy to evade taxes in violation of 26 U.S.C. § 7201[4], or aid and assist the filing of false tax returns in violation of 26 U.S.C. § 7206, is one of willfulness. Defendants must have intentionally violated a known legal duty. *See United States v. Pomponio, supra.*

The Government presented sufficient evidence of intent to support the jury's verdict under 18 U.S.C. § 371. A jury could reasonably infer that defendants intentionally aided the filing of false returns. Similar grounds support the inference that defendants intended to impede or obstruct the IRS from carrying out its functions.

Impeding the IRS, though not defendants' primary purpose, was part and parcel of the scheme. At a minimum, defendants knew the fictitious invoices would be recorded in corporate books and records, records on which corporate tax returns are based. Accurate disclosure of the transactions in corporate records and tax returns would prevent the scheme from working; the corporate bookkeepers and accountants supposedly deceived by the scheme would have to be notified to prevent the filing of false tax returns. The conversation between Gurary and Nochum Sternberg and Mandel regarding the tax difficulties of Mandel's partner indicates defendants were well aware their scheme would prevent or impede the IRS from learning the source of the cash received by the principals or the exact nature of the financial transaction. The evidence presented supports the reasonableness of the jury's verdict on the conspiracy count.

---

**3.** 18 U.S.C. § 371 provides:

If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each

shall be fined not more than $10,000 or imprisoned not more than five years, or both.

**4.** 26 U.S.C. § 7201 provides in part:

Any person who *willfully* attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall ... be guilty of a felony ... (emphasis added).

## II. Conscious Avoidance

Defendants also contend the trial judge improperly instructed the jury on conscious avoidance.[5] Their argument that this instruction permitted the jury to convict without finding the necessary knowledge and criminal intent rests on three separate points: (i) a conscious avoidance instruction is inappropriate when the relevant knowledge concerns future conduct of others; (ii) the instruction improperly allowed the jury to find intent based on conscious avoidance; and (iii) the instruction should not have been given because no evidence of conscious avoidance was presented.

Although these arguments might prove telling in other circumstances, they do not require setting aside the convictions in this case. Defendants first claim the instruction impermissibly converted the question of criminal knowledge into a question of foreseeability. Specifically, they assert a conscious avoidance instruction is only appropriate where the crime includes knowledge of an existing fact as an element. Because the requisite knowledge in this case centered on the future conduct of others—i.e., whether invoice purchasers and their principals would file false tax returns—defendants contend the instruction given converted the question of knowledge to one of probability.

Defendants' arguments might hold water if this case involved the sale of invoices on a single occasion. There, the defendants' expectations as to purchaser's conduct might be a question of mere probability or reasonable foreseeability—impermissible standards for imposing criminal liability and imprisonment.

Comments to the Model Penal Code § 2.02(7), from which the conscious avoidance instruction is derived, *see United States v. Jacobs*, 475 F.2d 270 (2d Cir.), *cert. denied sub nom. Lavell v. United States*, 414 U.S. 821, 94 S.Ct. 116, 38 L.Ed. 2d 53 (1973), suggest that in general, conscious avoidance instructions are only appropriate where knowledge of an existing fact, and not knowledge of the result of defendant's conduct, is in question. The comment states:

> The Code proposes that the case be viewed as one of acting knowingly when what is involved is a matter of existing fact, but not when what is involved is the result of the defendant's conduct, necessarily a matter of the future at the time of acting. The position reflects what was believed to be the normal policy of criminal enactments that rest liability on acting "knowingly." The inference of "knowledge" of an existing fact is usually drawn from proof of notice of high probability of its existence, unless the defendant establishes an honest, contrary belief.

Model Penal Code § 2.02(7), comment 9 (1985). Most instances where a defendant might be charged with aiding and abetting or conspiracy for crimes committed by others, for example, providing weapons later used in a bank robbery or providing coun-

---

5. Judge Walker instructed the jury:

> *[O]n the issue of the defendant's knowledge as to whether the invoices and cash would be used to defraud the IRS or accomplish the other tax objects of the conspiracy,* I instruct you that you may consider whether a defendant deliberately closed his or her eyes to what otherwise would have been obvious. Guilty knowledge of the unlawful nature of the conspiracy—if you find one to have existed—cannot be established by demonstrating mere negligence or even foolishness or recklessness on the part of the defendant.
>
> However, it is not necessary that the Government prove that a defendant knew any given fact or facts such as the details of a particular false filing or particular aspects of the tax laws.
>
> Rather, you may find that *a defendant knew the purpose* of the invoice and cash selling operation was to defraud IRS, or evade taxes, or file false returns, or aid and assist the filing of false tax returns if you find that
>
> 1. the defendant you are considering was aware of a high probability that the false invoices or cash would be used for one or more of these unlawful purpose, and
> 2. that defendant acted with deliberate disregard of how the invoices or the cash would be used, with a conscious purpose to avoid learning the truth on this subject.
>
> Conscious avoidance may satisfy the requirement of willfulness, unless you find that the defendant you are considering actually believed that the invoices and cash would not be used to defraud the IRS or to violate the tax laws to which I have referred.

terfeit bills later sold by the purchaser to another, involve a single transaction between the defendant and the soon-to-be perpetrator. In those cases, the "proof of notice of high probability" that the crime will in fact be committed is lacking, so that the inference of knowledge permitted under a conscious avoidance instruction cannot be drawn.

██ The present case, however, does not involve merely a single transaction, or even transactions affecting a single tax year. Defendants sold fictitious invoices totalling over $136 million, during a period of eight years, to over 200 purchasers. Several purchasers engaged in transactions with defendants over several tax years. All those testifying at trial indicated that fictitious invoices were included in deductions for cost-of-goods-sold on corporate returns, and that principals withdrew cash for personal use without declaring the cash as income. This, combined with the direct evidence of knowledge discussed above, provides sufficient "proof of notice of high probability" that purchasers were committing tax fraud to warrant a conscious avoidance instruction.

Defendants further contend that the conscious avoidance instruction permitted conviction without proof of specific intent to violate the tax laws. Decisions of this court indicate that in a conspiracy case, a conscious avoidance instruction may be given to show a defendant had some knowledge of the unlawful aims and objectives, but not to establish knowing participation or membership in the scheme charged. *See, e.g., U.S. v. Heinemann,* 801 F.2d at 93–94; *United States v. Lanza,* 790 F.2d 1015 (2d Cir.), *cert. denied,* 479 U.S. 861, 107 S.Ct. 211, 93 L.Ed.2d 141 (1986); *United States v. DiTommaso,* 817 F.2d 201, 218–19 (2d Cir.1987). In the present case, the judge limited his conscious avoidance instruction to whether defendants knew of

the illegal object or purpose of the alleged conspiracy.[6]

Finally, defendants' challenge the instruction on the grounds that no evidence of any conscious avoidance by defendants exists. This argument is simply without merit. Their whole defense centers on the notion that despite defendants' awareness that their conduct was probably illegal, they did not know purchasers would use the invoices and cash to commit tax fraud. Defendants' denial of knowledge, combined with the Government's presentation of evidence indicating defendants had notice of the high probability that this was occurring, warranted the conscious avoidance instruction.

### III. Trial Judge's Conduct

██ Defendants object to the trial judge's questioning of witnesses during trial, claiming that it conveyed his hostility to the defendants' theory of the case and biased the jury. In reviewing a claim of judicial misconduct, "we must determine whether the judge's behavior was so prejudicial that it denied [defendants] a fair, as opposed to a perfect, trial." *United States v. Pisani,* 773 F.2d 397, 402 (2d Cir.1985), citing *United States v. Robinson,* 635 F.2d 981 (2d Cir.1980) *cert. denied,* 451 U.S. 992, 101 S.Ct. 2333, 68 L.Ed.2d 852 (1981). Judge Walker's questioning did not deny defendants a fair trial. This trial was lengthy, and much of the evidence consisted of complicated, technical material. Our review of the transcript further indicates that trade lingo used by many of the witnesses might confuse a lay jury. Most of the Judge Walker's questions merely clarified testimony previously given. Any possible prejudicial effect was cured by the cautionary instruction.[7]

### IV. Speedy Trial Act

Defendants also contend their indictment on counts related to tax returns filed by

---

**6.** See note 4. Although the court also mentioned conscious avoidance in connection with willfulness, the components of which are knowledge and intent, a fair reading of that portion of the charge and of the charge as a whole indicates that conscious avoidance was to be used only in connection with the knowledge component.

**7.** Judge Walker charged:

If you believe the Court has expressed or intimated its opinion on any issue of fact, you should disregard it. Reaching a verdict in this case is exclusively your responsibility. Tr. 3543.

Irwin Feiner and his company violated the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.* Defendants Gurary and Nochum Sternberg were arrested on April 2, 1986, under a complaint charging them with crimes related to Feiner tax returns. Sixteen days later on April 18, 1986, Judge Duffy sitting in Part I granted a 60 day continuance pursuant to 18 U.S.C. § 3161(h)(8), extending the time in which defendants must receive a preliminary hearing or be indicted under the Speedy Trial Act. Pursuant to Rule 3 of the Rules for the Division of Business Among District Judges, Part I is the district court's Part for emergency and miscellaneous matters in civil and criminal cases, and for processing criminal actions and proceedings through the pleading stage. Defendants' appeal of that order was rejected by this court as interlocutory. After defendants filed a motion to dismiss the Feiner counts, but before Judge Walker's denial of that motion, Judge Duffy entered findings of fact supporting his previous order of continuance.

The findings were sealed, filed and docketed on the M–11–189 Docket (the "miscellaneous" docket), as required by the Southern District of New York's standing order controlling docketing and filing of papers containing grand jury material. Standing Order No. 1 (C.J. Brieant, S.D.N.Y. Oct. 16, 1986). The findings appear appropriately on the Court's record; there was no need to modify standard court procedures and add them to the docket kept in defendants' individual names as well.

■ Defendants challenge the grant of the continuance, and the denial of their motion to dismiss, on the basis that the findings required by 18 U.S.C. § 3161(h)(8) were not made. Defendants' contentions lack merit. Esther Sternberg was arrested after indictment, so that section 3161(b)'s thirty-day time limit does not apply to her. As to Gurary and Nochum Sternberg, we find Judge Duffy's findings on the record sufficient to support a continuance under 18 U.S.C. § 3161(h)(8).[8]

Under the law of this circuit, a court excluding time based on an ends-of-justice continuance under 18 U.S.C. § 3161(h)(8), before granting the continuance, must balance the factors specified in that section; the court need not, however, place the precise reasons on the record at that time. *United States v. Tunnessen,* 763 F.2d 74 (2d Cir.1985); *United States v. Matsushita,* 794 F.2d 46 (2d Cir.1986). In the present case, the sixty-day continuance was granted prospectively. The record of the hearing on the motion and Judge Duffy's order indicate that he considered submissions from both sides before determining that a continuance best served the ends of justice. The findings supporting the grant of a continuance are sufficiently particularized and amply supported by the record in this case. They state in part:

Upon the application of the United States, by Assistant United States Attorney David Spears, and based upon the sealed affidavit and sealed *ex parte* affidavit of Assistant United States Attorney Paul E. Summit, both dated April 17, 1986, upon the papers submitted in opposition by Nathan Lewin, Esq., counsel to the defendants, also dated April 17, 1986, and upon the argument before this Court on April 18, 1986;

\*  \*  \*  \*  \*  \*

IT IS FURTHER FOUND that the reasons supporting the Court's order of April 18, 1986 were as follows:

(a) delay in the filing of the Indictment was caused because the arrest of the defendants occurred at a time such that it was unreasonable to expect return and filing of the Indictment within the period specified in 18 U.S.C. § 3161(b);

(b) the facts upon which the grand jury was required to base its determination were unusual and complex; and

(c) the reasons set forth in the sealed affidavit and sealed *ex parte* affidavit of Assistant United States Attorney Paul E. Summit, dated April 17, 1987 [sic].

---

**8.** Defendants also challenge the findings order on the basis they received no notice of its entry. Even if the clerk of the court omitted to send notice of entry of the miscellaneous docket sheet order, that failure does not affect the order's validity. Responsibility for sending notice of entry of the order lies with the clerk of the court and not the United States Attorney.

The affidavit referenced in the order[9] explains that just before defendants' arrest Al Mayo, one of the middlemen selling invoices, agreed to cooperate with the Government's grand jury investigation. That cooperation both increased the danger that defendants would flee the country and expanded the scope of the grand jury investigation. While the record does not include all the details of how Judge Duffy balanced the need for a continuance against the interests favoring speedy trials, he was constrained somewhat by his need to keep grand jury information secret. In light of those difficulties, we find the record supports the continuance granted.

We have examined the other claims of the defendants and find no merit in them.

AFFIRMED.

9. Defendants claim that incorporation by reference does not satisfy the Speedy Trial Act's requirement of specific findings justifying exclusion, citing United States v. Janik, 723 F.2d 537, 545 (7th Cir.1983). That court's comment on incorporation by reference, however, pertains to a trial court's attempts to justify an exclusion under section 3161(h)(8)(A) based on analysis of a separate period. Other circuits, in determining whether a continuance is supported by reasons set forth in the record, have considered both the order of the court and the motions on which the order was based. See, e.g., United States v. Mitchell, 723 F.2d 1040 (1st Cir.1983).