4 F.3d 988
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Robert Paul SHARP, Defendant-Appellant.
 No. 92-5626.
 United States Court of Appeals,
Fourth Circuit.
 Argued: April 2, 1993.
Decided: August 24, 1993.
 
 Appeal from the United States District Court for the Southern District of West Virginia, at Parkersburg. Charles H. Haden, II, Chief District Judge. (CR-91-382-6)
 Argued: John David Fenwick, Goodwin & Goodwin, Charleston, West Virginia, for Appellant.
 Hunter P. Smith, Jr., Assistant United States Attorney, Charleston, West Virginia, for Appellee.
 On Brief: Michael W. Carey, United States Attorney, Charleston, West Virginia, for Appellee.
 S.D.W.Va.
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED IN PART.
 Before RUSSELL, PHILLIPS, and MURNAGHAN, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Robert Paul Sharp appeals his conviction and sentence for several charges arising from the distribution of marijuana and cocaine. Specifically, Sharp contends that the evidence was insufficient to support his conviction for conspiracy to distribute marijuana and cocaine, for maintaining a place for the purpose of such distribution, for witness tampering in connection with the investigation into his drug dealings, and for conspiracy to defraud the United States by evading and defeating the lawful governmental functions of the Internal Revenue Service. In addition, Sharp challenges the calculation of his sentence pursuant to the Sentencing Guidelines. We conclude that the evidence was sufficient to support his conviction of the first three charges, but was insufficient with respect to the conviction of conspiracy to defraud the government. We also find error in the district court's calculation of the appropriate offense level under the Sentencing Guidelines. Accordingly we affirm in part, reverse in part, and remand in part for resentencing.
 
 I.
 
 2
 Robert Paul Sharp, a forty-three year old gas company employee in Parkersburg, West Virginia, admits that he began smoking marijuana while in service in Vietnam[1] and also admits to continuing to do so until he was indicted in the present case. The government produced evidence that Sharp began selling marijuana and cocaine as early as 1979 and, beginning in the early '80s sold both from a house he owned at 1007 Swann Street, next door to his official residence (where his wife and daughters lived). Sharp's tenant at Swann Street, Mark Lemley, testified at trial that 1007 Swann Street was a "party house," where people came to use and purchase drugs. Sharp intermittently lived at 1007 Swann as well.
 
 
 3
 Bruce Dotson testified at trial that he sold marijuana and cocaine to Sharp. He specifically stated that during 1986 he sold one or two pounds of marijuana per week, at an average price of $1100 per pound, to Sharp at 1007 Swann Street. Sharp always paid in cash in order to avoid the tracing of checks. Dotson witnessed Sharp dividing the marijuana into smaller quantities (quarter ounces, half ounces, and ounces) by weighing it on triple-beam scales and placing the smaller quantities into small plastic bags, which he then sold to others for cash. When Dotson testified at trial, he initially could not identify Sharp. Only after he had answered all of the prosecution's queries was he able to point Sharp out in the courtroom. Dotson explained that he did not recognize Sharp at first because he had not seen Sharp in six years (Dotson was imprisoned most of that time) and because Sharp was heavier.
 
 
 4
 Another key government witness at trial was Sharp's friend Lemley, who lived at 1007 Swann Street from approximately 1983 to 1990. In exchange for immunity from prosecution, Lemley offered extensive testimony against Sharp. He testified that he obtained marijuana and cocaine from Sharp, that he witnessed Sharp purchasing these drugs from others, and that he saw Sharp resell the drugs at 1007 Swann Street and elsewhere. He also stated that Sharp directed him to keep the drugs out of sight when certain friends of Sharp visited (including those friends who testified at trial that they had never seen any drugs at 1007 Swann Street).
 
 
 5
 In 1990, IRS special agent Jeff Sandy contacted Lemley, and later met with him at the IRS office in Parkersburg. Lemley spoke with Sharp about the meeting. Sharp asked Lemley if he was questioned about drug trafficking and told him "that what goes on behind these closed doors stays behind these closed doors." Later, Sharp urged Lemley to "take the fall," i.e., claim that he, not Sharp, was the one engaged in drug trafficking. In exchange, Sharp offered to take care of him financially. Unfortunately for Sharp, Lemley did not follow his advice and testified on behalf of the government at Sharp's trial. Later in 1990, after Lemley had appeared before a federal grand jury, Sharp told an acquaintance, James Kramer-Wilt, in Lemley's presence, that if Lemley "[d]idn't keep [his] mouth shut about things, some people might be going to beat [him] up and you might find [him] in the bottom of the river with cement blocks on [his] legs."
 
 
 6
 The final key witness against Sharp was Kelly VanCamp, who testified to having a sexual "relationship" (sex-for-drugs exchange) with Sharp from 1986 until January 1990. In January 1990, VanCamp was arrested for distribution of marijuana which she had obtained from Sharp at 1007 Swann. She was questioned by investigators about her trafficking and the source of her drugs. She refused to cooperate. Sharp told her to tell the police that she had obtained the marijuana from a recently-deceased drug dealer named Lonnie Farley. VanCamp repeated Sharp's tale to the investigators, who confronted her with the fact that Farley had been in Florida at the time she claimed she had obtained the marijuana from him. When VanCamp told Sharp about this problem with the story, Sharp insisted she maintain that she travelled to Florida to buy the marijuana and returned in time to make the sale. Sharp explained that the trip could be made in 12 hours because he had done so himself. Later, VanCamp found a handwritten note in her apartment (which she rented from Sharp) which reminded her that it only takes 12 hours to get to Florida and was signed "Paul". At trial and in exchange for partial immunity, VanCamp testified, based on her receipt of many handwritten notes from Sharp, that the handwriting was Sharp's.
 
 
 7
 At both the grand jury hearing and the trial, the government relied on the testimony of co-conspirators and other witnesses[2] to support its charges against Sharp. Despite their acknowledged intermittent surveillance of Sharp for over ten years, government agents failed to make a controlled buy from Sharp or to obtain any physical evidence of drugs. The only physical evidence introduced at trial was the note to VanCamp.
 
 
 8
 In May of 1992, a grand jury in the Southern District of West Virginia charged Sharp in a four-count superseding indictment. It charged Sharp with conspiracy to distribute marijuana and cocaine (Count One), with maintaining a place for the purpose of distributing marijuana and cocaine (Count Two), with witness tampering (Count Three), and with a "Klein " conspiracy to defraud the United States by defeating the lawful government functions of the IRS in violation of 18 U.S.C. Sec. 371 (Count Four). Finally, it charged that Sharp obtained approximately $25,000 in proceeds from drug trafficking and that such sum of money was subject to forfeiture.
 
 
 9
 At trial, defense counsel challenged VanCamp's authentication of the handwritten note, but the district court overruled the objection after the government established that VanCamp was familiar with Sharp's handwriting.
 
 
 10
 For his part, Sharp offered the testimony of several of his friends that they had never seen drugs at 1007 Swann and moreover that they would be shocked if Sharp was violating the law. Defense counsel also proffered records regarding the value of certain property owned by Sharp (defense exhibits 1-12), but the government objected to the relevance of these exhibits. As defense counsel failed to explain any possible relevance, the district court sustained the government's objection and excluded these exhibits "without further foundation."
 
 
 11
 Sharp was convicted of all counts, and the jury found that $25,000 was subject to forfeiture. In preparation for his sentencing, a presentence report grouped counts 1, 2, and 3 as related conduct to arrive at a common offense level. The highest adjusted offense level for these three counts is that for witness tampering, i.e. level 20.
 
 II.
 
 12
 Sharp contends the district court abused its discretion in admitting into evidence the handwritten note which VanCamp testified Sharp had written to her. Specifically, he contends that under Federal Rule of Evidence 901(b)(2) the government was required to lay a foundation for admission of this evidence by proof of prior correspondence between him and VanCamp and by proof that VanCamp had witnessed Sharp in the act of writing to establish her competence as a lay witness to authenticate his handwriting. We disagree. This is simply not what Rule 901(b) requires. The Advisory Committee Notes to Rule 901(b) explicitly provide that authentication of handwriting may be based upon familiarity acquired "by exchanging correspondence." VanCamp's testimony that she received numerous notes and cards from Sharp clearly satisfies this requirement.
 
 
 13
 Sharp also contends that the district court abused its discretion in refusing to allow evidence of the relatively low value of his real estate holdings. This contention comes too late; Sharp failed to preserve this issue for review when he did not proffer any basis for admitting this evidence at trial. Moreover, even had he done so, we would not find abuse of discretion in the district court's refusal to admit this evidence. The value of Sharp's real estate holdings is simply of too limited relevance to require its admission.
 
 III.
 
 14
 Sharp next argues that the government failed to produce sufficient evidence to convict him on any of the four counts of which he was convicted. We disagree, except with respect to the Klein conspiracy count.
 
 
 15
 In reviewing the sufficiency of the evidence in a case, we
 
 
 16
 inquire whether "any rational trier of fact could have found the essential elements of the crime [charged] beyond a reasonable doubt," and ... construe the evidence in the light most favorable to the government, assuming its credibility, drawing all favorable inferences from it, and taking into account all the evidence, however adduced.
 
 
 17
 United States v. Giunta, 925 F.2d 758, 764 (4th Cir. 1991) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). We do not reweigh the evidence or reconsider the credibility of the witnesses. See Glasser v. United States, 315 U.S. 60, 80 (1942).
 
 
 18
 Extensive eyewitness testimony was introduced against Sharp on the drug charges (counts 1 and 2): Dotson, Lemley, and VanCamp identified Sharp as a marijuana dealer, stated that they assisted VanCamp in distributing drugs, and testified that he used 1007 Swann Street as a point of distribution. In addition, both Lemley and VanCamp testified that Sharp attempted to obstruct the investigation by influencing their testimony (count 3). James Kramer-Wilt also testified as to Sharp's threat to harm Lemley if Lemley continued to testify against him. Thus, the testimony presented was sufficient to find the requisite elements of counts 1, 2, and 3 and to sustain the conviction on those counts.
 
 
 19
 We conclude, however, that the evidence was insufficient under the Glasser-Jackson tests to sustain Sharp's conviction on count 4 which charged a conspiracy to evade taxes in violation of 18 U.S.C. Sec. 371. See United States v. Klein, 124 F. Supp. 476 (S.D.N.Y. 1954).[3] To establish such a conspiracy, the government must prove (1) the existence of an agreement; (2) an overt act by one of the conspirators in furtherance of the agreement's objectives; and (3) an intent on the part of the conspirators to agree, as well as to defraud the United States. United States v. Vogt, 910 F.2d 1184, 1202 (4th Cir. 1990), cert. denied, 498 U.S. 1083 (1991).
 
 
 20
 The government offered the following proof to support its Klein conspiracy charge: (1) evidence that Sharp did not report any income he may have derived from the sale of drugs to the IRS; (2) testimony that Sharp always purchased drugs with cash; and (3) VanCamp's testimony that she lied to a group of police interrogators which included IRS Special Agent Jeff Sandy based on instructions from Sharp.
 
 
 21
 In Ingram v. United States, 360 U.S. 672 (1959), the Supreme Court held that "[i]t is fundamental that a conviction for conspiracy under 18 U.S.C. Sec. 371 cannot be sustained unless there is 'proof of an agreement to commit an offense against the United States.' " Id. at 677-678 (quoting Pereira v. United States, 347 U.S. 1, 12 (1954)). "If impeding the IRS is only a collateral effect of an agreement, rather than one of its purposes, then a conviction for a Klein conspiracy cannot stand." Vogt, 910 F.2d at 1202. Considered in its light most favorable to the government, the evidence only shows that the purpose of VanCamp's agreement with Sharp was to help him avoid criminal liability for selling drugs, and that to the extent her resulting conduct also impeded the IRS in collecting taxes on the proceeds of Sharp's illegal drug sales, this was merely a collateral effect. The government completely fails to present any evidence that VanCamp intended to help Sharp evade his taxes, and as the Supreme Court has repeatedly held, "in order to sustain a judgment of conviction on a charge of conspiracy to violate a federal statute, the Government must prove at least the degree of criminal intent necessary for the substantive offense itself." United States v. Feola, 420 U.S. 671, 685-86 (1975) (citing Ingram, 360 U.S. at 678; Pettibone v. United States, 148 U.S. 197 (1893)).
 
 
 22
 Although VanCamp was called as a government witness, the prosecutor never asked her if she lied to the police in order to help Sharp avoid paying income taxes. Nor was she asked if she was aware of any income tax liability Sharp might owe as a result of his drug dealings. In fact, the only time she mentioned the IRS during her lengthy testimony was in response to a prosecution question of who had interrogated her earlier. Her answer indicated that among the group of people who had questioned her was IRS Agent Sandy.
 
 
 23
 This does not suffice to carry the Government's burden of proof on this conspiracy count, and we must therefore reverse the conviction upon it.
 
 IV.
 
 24
 Though Sharp failed to object at sentencing to the court's erroneous use of a level of 22 rather than the correct level of 20 on grouped counts 1, 2, and 3, the Government has conceded the error on this appeal and we must therefore remand for resentencing as to those counts.
 
 
 25
 Accordingly, we affirm the convictions on counts 1, 2, and 3, reverse that on count 4, and remand for resentencing on counts 1, 2, and 3.
 
 SO ORDERED
 
 
 [1]
 Sharp served with distinction in the U.S. Marine Corps in Vietnam, earning several awards for his service
 
 
 [2]
 Four other witnesses testified that they obtained marijuana and cocaine from Sharp at 1007 Swann Street
 
 
 [3]
 A "Klein conspiracy" involves
 [a] concealment of business activities and the source and nature of income by the defendants as part of their conspiracy can be deemed to constitute a defrauding of the Government in the exercise of an important and essential Government function, namely, the assessment and collection of taxes.
 Klein, 124 F. Supp. at 480.